556 S.E.2d 693

**Louis V. VICK, Jr., Respondent,**

**v.**

**SOUTH CAROLINA DEPARTMENT OF TRANSPORTATION, Appellant.**

**No. 3393.**

Court of Appeals of South Carolina.

Heard Sept. 6, 2001.

Decided Oct. 15, 2001.

Rehearing Denied Dec. 20, 2001.

---

472

474

Christopher L. Murphy, of Stuckey Law Offices, of Charleston; and Assistant Chief Counsel Glennith C. Johnson, of Columbia, for appellant.

Joseph S. Brockington, of Charleston, for respondent.

HEARN, C.J.:

Louis V. Vick, Jr. brought this inverse condemnation action against the South Carolina Department of Transportation (SCDOT), alleging damage to a private road. The matter was referred to the master-in-equity to address the issue of ownership of the property, reserving the issue of damages if the road was found to be private for a jury trial. After the master found Vick owned the road, a jury awarded him $134,261.52, and the circuit court awarded attorney fees and costs. We affirm.

## FACTS

Pumpkin Lane is a 15–foot–wide, dead-end road near the Town of Mount Pleasant. It is approximately 980 feet long and runs in a straight line beside five residential lots. The road and surrounding property were originally part of a tract conveyed to Vermell Ola Wiggins. In 1954, she subdivided the property into five lots. On a plat prepared at that time (Wiggins Plat), Pumpkin Lane was named "Vermell Ole [sic] Wiggins Drive."

Around 1980, Vick made a verbal agreement with Benjamin Wiggins, Vermell's husband, to purchase all of the lots on Pumpkin Lane over time. By 1988, Vick owned three of the five lots. He purchased the fourth lot in 1989 and the fifth in 1997. In 1996, Vick received and recorded a quitclaim deed to Pumpkin Lane from Benjamin Wiggins as Vermell's heir.

In the late 1980s, SCDOT made plans for construction of the Mark Clark Expressway, including placing two concrete pipes under Pumpkin Lane to remove water that was expected

to drain along the expressway. Installation of the pipes began in 1990.[1] When the project was completed, the contractors realized they had mistakenly placed the pipes partially under Vick's lots, instead of under Pumpkin Lane as detailed in the plans. As a result, SCDOT condemned a five-foot-wide strip of land on each of the lots for which Vick was paid $15,000.

In addition to the improper pipe placement, Vick noticed a deterioration in the condition of Pumpkin Lane. Before the construction, the road had a gravel surface. SCDOT resurfaced the road with dirt. Portions of the road caved in and deep potholes developed due to problems with the underground pipes. Vick purchased a dump truck and brought in fill material to repair the road after he unsuccessfully tried to persuade SCDOT to do so.

In 1997, Vick brought this action, alleging he was entitled to compensation because the improper installation of the pipes damaged his road and caused a diminution in the value of his property. Vick also sought attorney fees and costs. By consent order of reference, the case was bifurcated and the parties agreed to have the master hear the issue of ownership, with any damages to be tried before a jury. The master found Pumpkin Lane was privately owned by Vick and that it had not been dedicated to the public. In September 1999, a damages trial was held, and the jury awarded Vick actual damages of $134,261.52. After the verdict, SCDOT moved for a new trial or remittitur, arguing the verdict was outside the range of the evidence. The circuit court denied the motions and awarded Vick attorney fees of $41,425.00 and costs of $2,678.58. SCDOT appeals.

## DISCUSSION

### I. Implied Dedication

SCDOT contends the master erred in failing to find Pumpkin Lane was impliedly dedicated for public use because the Wiggins Plat showed a small road running along five lots. We disagree.

---

1. Vick contends the date of the taking was May 29, 1990.

■ The determination of whether a road has been dedicated to public use is one in equity. *Mack v. Edens,* 320 S.C. 236, 239, 464 S.E.2d 124, 126 (Ct.App.1995). Therefore, this court may find facts in accordance with its own view of the preponderance of the evidence. *Id.*

■ Real property interests are normally conveyed by deed or will. *Shia v. Pendergrass,* 222 S.C. 342, 348, 72 S.E.2d 699, 701 (1952). In situations where title is claimed by dedication rather than an actual conveyance, the actions of the parties "must be so unequivocal and positive as to leave little doubt that it was the intention of the owner to dedicate the same to the public use." *Id.* To perfect a claim of dedication, a party must show two elements: (1) the owner's clear and unmistakable intention to dedicate the property to public use, and (2) acceptance of that property by the public. *Tupper v. Dorchester County,* 326 S.C. 318, 326, 487 S.E.2d 187, 191–92 (1997). We find the master properly applied these principles in finding there was no implied dedication.[2]

■ South Carolina law recognizes two types of implied dedication—"one where the question of implied dedication arises from the sale of land with reference to maps or plats; the other when the dedication arises ... from an abandonment to or acquiescence in public use." *Shia,* 222 S.C. at 347, 72 S.E.2d at 701. Here, SCDOT contends the former applies.

■ We find the Wiggins Plat alone does not conclusively manifest an intent to dedicate the road to the public, particularly in light of the fact that nearly all of the deeds Wiggins prepared conveying the lots merely granted the buyer an easement for ingress and egress over the road. This necessarily gives rise to the inference that she intended to retain

---

2. SCDOT argues that the master used the wrong burden of proof in ruling on this issue, claiming "[w]hen a dedication is made by deed or plat, as in the instant case, not only is the burden of proof far less than 'clear, convincing, and unequivocal' by the party asserting an implied dedication, but once such a grant is shown, the burden of proof then shifts to the other party" and citing *Corbin v. Cherokee Realty Co.,* 229 S.C. 16, 91 S.E.2d 542 (1956), and *Home Sales, Inc. v. City of North Myrtle Beach,* 299 S.C. 70, 382 S.E.2d 463 (Ct.App.1989). We disagree. As we read these cases in their entirety, they do not lessen the standard nor do they shift the burden of proof in cases of dedication by deed or plat.

ownership. Although the Wiggins Plat may have created a private right of easement between Wiggins and the purchasers, the fact that Wiggins allowed this small group to use the road did not vest any rights in the public at large or convey an offer of the road to the county. There is a "clearly defined distinction between the rights acquired by the public through dedication effected by platting and sale, and the private rights acquired by the grantees by virtue of the grant or covenant contained in a deed which refers to a plat, or bounds the property upon a street through the grantor's lands." *Outlaw v. Moise,* 222 S.C. 24, 31, 71 S.E.2d 509, 512 (1952) (citation omitted). The *Outlaw* court further found:

> [W]here lands are platted and sales are made with reference to the plat, the acts of the owner in themselves merely create private rights in the grantees entitling the grantees to the use of the streets and ways laid down on the plat or referred to in the conveyance. But these rights are purely in the nature of private rights founded upon a grant or covenant, and no public rights attach to such streets or lands until there has been an express or implied acceptance of the dedication evidenced either by general public use or by the acts of the public authorities.

*Id.* Therefore, we find a plat alone is not determinative of implied dedication where there is evidence of the grantor's contrary intent.

■ Even if the plat constituted some indicia of intent to dedicate the property to the public, "[o]ur inquiry does not stop [t]here, however. After an owner expresses an intent to dedicate property to the public by a plat, the public must accept the dedication to make it complete." *Van Blarcum v. City of N. Myrtle Beach,* 337 S.C. 446, 451, 523 S.E.2d 486, 489 (Ct.App.1999). "No formal acceptance by the public of an offer of dedication is necessary, and acceptance of the offer may be implied by the public's or public authority's continuously utilizing or maintaining the property in some fashion." *Id.*

■ Acceptance will not be implied by operation of law as asserted by SCDOT. When property is subdivided and sold according to a plat showing streets or roads, "the grantees acquire a private easement in the streets, but the easement

does not become a public easement until there has been an express or implied acceptance of the dedication, evidenced either by general public use or by acts of the public authorities." *Giles v. Parker*, 304 S.C. 69, 73, 403 S.E.2d 130, 132 (Ct.App.1991); *see also Walker v. Guignard*, 293 S.C. 247, 248, 359 S.E.2d 528, 529 (Ct.App.1987) (holding although a designation of a street on a plat may have been an offer of dedication, "there was never any acceptance, without which the purported dedication would not be complete").

█ In this case, the evidence shows no public acceptance. Aside from the buyers of the five lots, there was no evidence of general use by the public or of acceptance or maintenance by city or county authorities. The former deputy attorney for Charleston County testified there was no public dedication by Wiggins or an acceptance by the public or any governmental entity, and she believed Pumpkin Lane was a private road. She stated that Wiggins named the road after herself and called it a private drive. She also noted that a 1992 letter from Charleston County denied Vick's requests to maintain the road on the basis it was private property.

Accordingly, we affirm the master's finding there was no implied dedication of Pumpkin Lane.

## II. Interest

█ SCDOT next contends the circuit court committed reversible error in charging the jury on interest.[3] At oral argument, SCDOT conceded Vick's entitlement to an award for interest and merely disputed how that award should be determined. SCDOT contends the South Carolina Eminent Domain Procedures Act (Act) should control and therefore it was error for the trial judge to charge the jury on interest. We disagree.

The Act, a uniform procedure for condemnation proceedings enacted in 1987, expressly requires interest be paid at the rate of eight percent yearly on the sum found to be just compensa-

---

**3.** During its instructions, the circuit court charged the jury as follows: "I charge you that the requirement that just compensation shall be paid is comprehensive and includes all elements and no specific command to include interest is necessary when interest or its equivalent is a part of such compensation."

tion, accruing from the date of filing of the condemnation notice to the date of the verdict or judgment. S.C.Code Ann. § 28–2–420(A) (1991). The Act is the exclusive procedure for condemnation by a governmental entity. S.C.Code Ann. § 28–2–60 (1991) ("The provisions of this chapter shall constitute the exclusive procedure whereby condemnation may be undertaken in this State."); *see Godwin v. Carrigan,* 227 S.C. 216, 225, 87 S.E.2d 471, 475 (1955) (holding the provision for exclusivity "contemplates that the exclusiveness shall only apply to those cases or situations which are embraced within the machinery of the condemnation statutes.").

This case, however, is a common law action brought by the landowner for inverse condemnation, rather than a condemnation action. *See* 27 Am.Jur.2d *Eminent Domain* § 829 (1996) ("The term 'inverse condemnation' describes an action grounded, not on statutory condemnation power, but on the constitutional proscription against the taking or damaging of property for public use without just compensation."). As explained by our supreme court: "One basic difference between condemnation and inverse condemnation is that in condemnation proceedings, the governmental entity is the moving party, whereas, in inverse condemnation, the property owner is the moving party." *S.C. State Highway Dep't v. Moody,* 267 S.C. 130, 136, 226 S.E.2d 423, 425 (1976). Unlike condemnation actions where interest is set by statute, the right to prejudgment interest in inverse condemnation actions stems from the just compensation clauses of the United States and state constitutions. 27 Am.Jur.2d *Eminent Domain* § 902 (1996); *see also Aetna Life & Cas. Co. v. City of Los Angeles,* 170 Cal.App.3d 865, 216 Cal.Rptr. 831, 839 (1985) (finding award of prejudgment interest mandated by "the Fifth Amendment of the United States Constitution prohibiting the taking of private property for public use without just compensation").

■ A plaintiff is generally entitled to interest in property cases. 11 S.C. Juris. *Damages* § 8(a) (1992); *see E.I. Du Pont De Nemours & Co. v. Lyles & Lang Constr. Co.,* 219 F.2d 328, 342 (4th Cir.1955). This court noted in a condemnation case that "[t]he purpose of awarding interest is to compensate the landowner for the delay in the monetary payment that occurred after the property has been taken." *S.C. Dep't of Transp. v. Faulkenberry,* 337 S.C. 140, 149, 522 S.E.2d 822,

826 (Ct.App.1999). The addition of prejudgment interest is designed to pay the landowner for the time value of money that should have been received at the time of the taking and is an element of just compensation. *Id.*

We find this principle is equally applicable in an action for inverse condemnation; however, unlike government condemnations, the legislature has not set a rate or method for determining interest in inverse condemnation actions. South Carolina case law implies that interest recoverable in inverse condemnation actions is an issue to be charged to the jury for its determination as a measure of damages. *See S.C. State Highway Dep't v. Miller,* 237 S.C. 386, 392, 117 S.E.2d 561, 564 (1960) (stating, "[a]ssuming, without deciding," that interest was recoverable, "it was the duty of the respondents to call the matter of interest on the award to the attention of the trial [j]udge and request an instruction upon such so that the jury could, by their verdict, determine what was 'just compensation'."). Moreover, "[t]he court may even consider the market rate of interest rather than the statutory legal rate, if that will be required to compensate the plaintiff fully." 11 S.C. Juris. *Damages* § 8(a); *see E.I. DuPont De Nemours & Co.,* 219 F.2d at 342. Therefore, we affirm the circuit judge's charge.[4]

### III. New Trial/Remittitur

SCDOT next asserts the circuit court erred by not granting its motion for a new trial or remittitur because the verdict exceeded the scope of the evidence. We disagree.

"The trial judge *alone* has the power to grant a new trial *nisi* when he finds the amount of the verdict to be merely inadequate or excessive." *O'Neal v. Bowles,* 314 S.C. 525, 527, 431 S.E.2d 555, 556 (1993). The jury's determination of damages is entitled to substantial deference. *Rush v. Blanchard,* 310 S.C. 375, 379, 426 S.E.2d 802, 805 (1993). The denial of a new trial motion is within the discretion of the trial

---

4. Interestingly, we note the apparent rate of interest applied by the jury was less than the eight percent provided in the Act. If the jury used the highest value Vick assigned to his damages in reaching their verdict of $134,261.52, the interest component of that award is $53,411.52 spread over a period of 9.25 years, or approximately 7.14 percent yearly.

court, and absent an abuse of discretion, it will not be reversed on appeal. *Cock–N–Bull Steak House, Inc. v. Generali Ins. Co.,* 321 S.C. 1, 9, 466 S.E.2d 727, 731 (1996). When a defendant's request to remit a verdict is denied, an appellate court will reverse only if the refusal to remit was controlled by an error of law or a new trial absolute should have been granted. *Knoke v. S.C. Dep't of Parks, Recreation & Tourism,* 324 S.C. 136, 141, 478 S.E.2d 256, 258 (1996).

At trial, Vick presented two methods for calculating the damage to Pumpkin Lane.[5] The first method was based on the diminution in value to the entire tract consisting of Pumpkin Lane and the five lots. Vick testified this property was worth $388,437, and the improper installation caused a twenty percent diminution in value, resulting in a net damage amount of $77,687. Vick's second method of computing damages was based on the damage to Pumpkin Lane alone. Vick testified the road was 15 feet wide and had a value of $5.50 per square foot. He stated the length of road directly in front of the lots was 688 feet, resulting in a figure of $56,760. Using the entire length of Pumpkin Lane (980 feet), the figure would be $80,850.

On appeal, SCDOT asserts the court erred in denying its motions for a new trial or remittitur because the verdict falls outside the highest measure of damages Vick presented. We disagree. If the jury's award included compensation for inter-

---

5. SCDOT objected to Vick's testimony as to the value of all of the property, arguing he was not entitled to damages for the diminution of surrounding property because it did not impact the other properties and, further, some of the lots were not owned by him when the pipes were first installed. Moreover, SCDOT raises as an additional issue on appeal that the circuit court erred in allowing evidence of the diminished value of all of the lots when he only owned three of the lots when the plans were announced in 1988. We disagree. We note that the taking here did not occur until after the pipes were laid in 1990. By the time of trial, Vick owned all of the real property in question in fee simple and therefore possessed any rights that his predecessor in interest may have had. *See* 63C Am.Jur.2d *Property* § 11 (1997) (" '[R]eal property' includes land, possessory rights to land, and that which is appurtenant to the land."). A landowner may always testify to the value of his or her property except in extreme cases where "the landowner's want of qualification is so complete that his testimony is entirely worthless." *Seaboard Coast Line R.R. v. Harrelson,* 262 S.C. 43, 46, 202 S.E.2d 4, 4–5 (1974). Accordingly, we find Vick's testimony was proper.

est or its equivalent since the date of the taking, the amount of damages is within the range of the evidence. Having found the charge on interest was proper, we find no abuse of discretion in the circuit court's refusal to grant a remittitur or new trial.

## IV. Attorney Fees

Lastly, SCDOT contends Vick waived any right to attorney fees and costs because he did not follow the provisions of S.C.Code Ann. § 28–2–510 (1991). It alternatively argues the amount of attorney fees awarded is excessive in light of Vick's attorney's affidavit. We disagree.

We find these issues are not preserved for our review.[6] As to Vick's entitlement to attorney fees, SCDOT never raised to the circuit court that Vick was not entitled to attorney fees for failure to follow section 28–2–510. Rather, the parties appeared to stipulate during the damages trial that the matter would be handled by affidavit at the conclusion of the trial. Thus, this issue cannot be raised for the first time on appeal. *Talley v. S.C. Higher Educ. Tuition Grants Comm.*, 289 S.C. 483, 487, 347 S.E.2d 99, 101 (1986) (alleged error must be raised to and ruled upon by trial judge to preserve issue for appellate review).

To the extent SCDOT asserts the attorney fees are excessive because they exceed the amount that would be due on an hourly basis, this issue also was not preserved for the same reasons discussed above. In any event, the award was not error. "Where an attorney's services and their value

6. Vick's prayer for relief in his complaint included a request for attorney fees and costs. The master, in his order ruling on SCDOT's and Vick's motions to reconsider, ruled that Vick was entitled to attorney fees and costs pursuant to S.C.Code Ann. § 28–2–510(A) (1991). At trial, both attorneys advised the circuit court that "the parties have agreed that the issue of attorneys' fees should be handled by affidavit after the trial itself." After the trial, Vick's attorney submitted an affidavit stating he had worked for Vick in the past at an hourly rate of $130, but in this case the fee agreement called for a one-third contingency fee. He stated that he spent 137.2 hours on this matter, plus 59.1 hours by an associate, and 7.7 hours of paralegal time. The circuit court awarded Vick $41,425.00 in attorney fees and $2,678.58 for costs. SCDOT made no motion for reconsideration of the circuit court order to challenge either Vick's entitlement to attorney fees or the way that award was calculated.

are determined by the trier of fact, an appeal will not prevail if the findings of fact are supported by any competent evidence." *Baron Data Systems, Inc. v. Loter,* 297 S.C. 382, 384, 377 S.E.2d 296, 297 (1989). In determining an award of attorney fees, the court should consider the following six factors: "(1) the nature, extent, and difficulty of the case; (2) the time necessarily devoted to the case; (3) professional standing of counsel; (4) contingency of compensation; (5) beneficial results obtained; and (6) customary legal fees for similar services." *Jackson v. Speed,* 326 S.C. 289, 308, 486 S.E.2d 750, 760 (1997). The circuit judge's order in this case shows that he considered these factors in determining a figure he believed constituted reasonable compensation. We find these findings are supported by the evidence in the record and affirm the award of attorney fees and costs.

## CONCLUSION

We affirm the master's determination that Pumpkin Lane has not been dedicated to public use. We also affirm the verdict rendered in the damages trial and the circuit court's entry of judgment, including its award of attorney fees and costs.

**AFFIRMED.**

CURETON and HOWARD, JJ., concur.