THE STATE OF SOUTH CAROLINA
In The Court of Appeals

 
 
 
James A. Turner, Jr., individually and as shareholder of Bayshore Association, 
 Inc.,        Appellant-Respondent,
 
 
 

v.

 
 
 
Oconee County, Joseph M. Sylvester and Marjorie V. Sylvester, Co-Trustees 
 of the Sylvester Family Trust, Jack C. Prescott, Doris Freeman Prescott 
 and Bayshore Association, Inc.,       
Defendants,
Of Whom Oconee County, Joseph M. Sylvester and Marjorie V. Sylvester, 
 Co-Trustees of the Sylvester Family Trust, and Bayshore Association, Inc. 
 are        Respondents,
 
 
 

and

 
 
 
Jack C. Prescott and Doris Freeman Prescott are       
Respondents-Appellants.
 
 
 

Appeal From Oconee County 
Ellis B. Drew, Jr., Master in Equity

Unpublished Opinion No. 2003-UP-471
Heard March 11, 2003  Filed July 24, 
 2003

AFFIRMED AS MODIFIED

 
 
 
Robert Scott Sprouse, of Seneca, for Appellant-Respondent.
Bradley A. Norton, of Walhalla, for Respondents Oconee County 
 and Bayshore Association, Inc.
Perry H. Gravely, of Pickens, for Respondents-Appellants.
 
 
 

STILWELL, J.:  This action involves an access 
 path to the water in a subdivision on Lake Hartwell.  James Turner, a resident 
 of the subdivision, brought this action (1) seeking a declaratory judgment that 
 an access area in the subdivision is a public road that must be maintained by 
 the county, (2) alleging the landowners on either side of the access trespassed 
 on the access by encroachment, and (3) seeking to compel the homeowners association 
 to open the gated access.  The master granted the county summary judgment, refused 
 to require Turners neighbors to remove the alleged encroachments, and ruled 
 the homeowners association must maintain the access and keep it open for all 
 property owners in the subdivision.  Turner appeals, as do Jack and Doris Prescott, 
 his neighbors on one side of the access.  We affirm as modified.
BACKGROUND
The access path in dispute links the roads of Bayshore 
 Subdivision in Oconee County with Lake Hartwell.  The developer filed a plat 
 setting forth the lots and roads of the subdivision.  The plat showed a path 
 between two waterfront lots, Lots 67 and 68, that was labeled access.  The 
 access path had a width of 40 feet except for its border with the subdivision 
 road, which flared as the corners of Lots 67 and 68 rounded.  Lot 67 is owned 
 by Jack and Doris Prescott, and Lot 68 is owned by Joseph and Marjorie Sylvester.  

Turner purchased two interior lots in the subdivision.  
 The sales brochure produced by the developer stated that all residents of the 
 subdivision regardless of location, are guaranteed accessibility rights of 
 the Lake and the use of the water.  Turner began to use the access path in 
 question during the 1960s and has continued his use of the access.  
In the mid-1970s, the developer issued a deed to 
 the homeowners association granting it ownership of the access.  At some point 
 in time, Oconee County began maintenance of the subdivisions streets.  The 
 subdivisions streets were paved but the access was not.  The county did, however, 
 mow the access when it mowed other areas in the subdivision.  In 1980, the homeowners 
 association placed a gate on the access, and the county soon thereafter ceased 
 mowing the area.  Turner was provided with a key to the gate and continued having 
 use of the access.  
After the gates erection, the Sylvesters and Prescotts 
 began planting shrubbery, trees, and other vegetation along the borders of the 
 access.  The homeowners association later passed a resolution declaring the 
 access a greenway.  Thereafter, Turner filed this action against the county, 
 the homeowners association, and the Sylvesters and Prescotts.
LAW/ANALYSIS
I.  Turners Appeal
a.     Summary Judgment for Oconee County 
Turner first argues the 
 court erred in granting Oconee Countys motion for summary judgment.  He contends 
 there is evidence the access was dedicated as a public road or that it was accepted 
 as such by the county.  We disagree.
The determination of whether 
 a road has been dedicated to public use is one in equity.  Therefore, this court 
 may find facts in accordance with its own view of the preponderance of the evidence.  
 Vick v. South Carolina Dept. of Transp., 347 S.C. 470, 477, 556 S.E.2d 
 693, 697 (Ct. App. 2001) (internal citation omitted). 
Dedication requires two 
 elements.  First, the owner must express in a positive and unmistakable manner 
 the intention to dedicate his property to public use.  Second, there must be, 
 within a reasonable time, an express or implied public acceptance of the property 
 offered for dedication.  Mack v. Edens, 320 S.C. 236, 239, 464 S.E.2d 
 124, 126 (Ct. App. 1995) (internal citation omitted).  
The record indicates the 
 developer created the access with the intent to provide lake access to the subdivisions 
 residents.  The access path was identified on the plat in a different fashion 
 than were the roads, which were intended to be dedicated to public use.  The 
 access has been limited to the residents of the subdivision, as is evident by 
 the locked gate on the path that only residents have keys to open. Additionally, 
 the record contains no evidence of public acceptance of the access as a dedicated 
 road.  Neither Oconee County nor the general public accepted the access either 
 expressly or implicitly.  There was no evidence presented that it was used by 
 the general public.  Additionally, although the county mowed the access for 
 a short period of time during the 1970s, it never paved the access, it did not 
 have a key to the gate, and it ceased mowing the access when the gate was erected.  
 The record clearly demonstrates the access was never intended for public use 
 and the county did not accept it as public property. 
 b.     Metes and Bounds of the Access
Turner next argues the trial 
 court erred in not declaring the metes and bounds of the access path and in 
 not requiring the Sylvesters and Prescotts to remove their alleged encroachments.  
 Any ruling by the master on the metes and bounds of the access would have been 
 superfluous as the plat filed by the developer clearly established the access 
 as being 40 feet wide.  Thus, the homeowners association, charged by the master 
 with maintaining the access, does not have the authority to allow others to 
 impede any subdivision homeowner from using the full 40 feet width of the access.  
 We therefore modify the masters order and direct the homeowners association 
 to ensure the entire 40 feet width of the access is available to all homeowners 
 in the subdivision.  
II.  Prescotts 
 Appeal
 a.     Persons with Access Rights
The Prescotts argue the 
 trial court erred in finding that all property owners of Bayshore Subdivision 
 have the right to use the access path because Turner did not raise the issue 
 in his pleadings.  We find no error.
Although Turner did not 
 specifically assert the rights of all subdivision residents to use the access, 
 his complaint did request that it be declared a public road.  Furthermore, in 
 their answer and counterclaims the Prescotts asserted the access was limited 
 to members of the homeowners association.  It is clear from the pleadings of 
 the parties as well as the arguments presented during the hearing that both 
 Turner and the Prescotts implicitly raised the issue of whether all members 
 of the subdivision had the right to use the access.  Accordingly, we find the 
 issue of whether the property owners of the subdivision had access to the access 
 path was properly before the master.  
 b.     Adverse Possession Counterclaims
Additionally, the Prescotts 
 maintain the court erroneously dismissed their counterclaims for adverse possession 
 of a portion of the access where their driveway crosses it.  We find no error.
To constitute adverse possession, 
 which results in obtaining title to the disputed property, the possession must 
 be continuous, hostile, open, actual, notorious, and exclusive for the requisite 
 period.  Getsinger v. Midlands Orthopaedic Profit Sharing Plan, 327 
 S.C. 424, 430, 489 S.E.2d 223, 226 (Ct. App. 1997).  

[A]dverse possession requires hostile possession, that is, 
 possession with intention to dispossess the owner.  The mere possession of land, 
 however, does not in and of itself manifest hostility toward the landowner. 
 . . . Possession under a mistaken belief that property is ones own and with 
 no intent to claim against the propertys true owner cannot constitute hostile 
 possession.  

Lusk v. Callaham, 287 S.C. 459, 461, 339 
 S.E.2d 156, 159 (Ct. App. 1986) (internal citations omitted), limitation 
 of holding recognized by Perry v. Heirs at Law & Distributees of 
 Gadsden, 316 S.C. 224, 225-26, 449 S.E.2d 250, 251 (1994) (noting Lusk 
 holding is limited to boundary line disputes and does not apply to tract disputes).  
 [T]he occupancy of land beyond the true boundary line, by an encroaching owner, 
 does not form a basis for adverse possession, unless the encroachment is made 
 with an intention to claim and hold adversely.  Where one [who] is in the possession 
 of land up to a supposed line intends to claim only to the true line, his possession 
 is not hostile and will not ripen into title.  Lynch v. Lynch, 236 S.C. 
 612, 623, 115 S.E.2d 301, 306-07 (1960). 
          Mr. Prescott testified at trial that he 
 believed the portion of his driveway that encroached upon the flared portion 
 of the access belonged to him.  The contest, therefore, is between adjoining 
 landowners, making it a true boundary dispute.  Prescott testified that he did 
 not learn that this portion of his driveway was a part of the access until Turner 
 filed this action.  Thus, Prescotts possession of the disputed area across 
 his true boundary cannot be considered hostile.  Additionally, Prescott testified 
 the vegetation and other improvements he made to the path were for the benefit 
 of members of the association.  Accordingly, the master properly dismissed the 
 Prescotts adverse possession claim.
AFFIRMED AS 
 MODIFIED.
 CURETON and HOWARD, JJ., concur.