THIS OPINION HAS NO
 PRECEDENTIAL VALUE.  IT SHOULD NOT BE CITED OR RELIED ON AS PRECEDENT IN ANY
 PROCEEDING EXCEPT AS PROVIDED BY RULE 239(d)(2), SCACR.
THE STATE OF SOUTH CAROLINA
In The Court of Appeals

 
 
 
 The Milton P.
 Demetre Family Limited Partnership, Plaintiff,
 v.
 Harry Beckmann,
 III, Patricia P. Beckmann, Annie Ruth Hilton Crowley, Raymond Moody Crowley,
 Donald William Crowley, Harris L. Crowley, Jr., and Annie Ruth Crowley Atkinson, Defendants.
 The Milton P.
 Demetre Family Limited Partnership, Plaintiff,
 v.
 City of Folly Beach, Defendant,
 and Emily S.
 Brown, Annie Ruth Hilton Crowley, Harry Beckmann, III, and Patricia P.
 Beckmann, Intervenors,
 of whom The
 Milton P. Demetre Family Limited Partnership is the Appellant,
 and City of
 Folly Beach,  Emily S. Brown, Harry Beckmann, III, Patricia P. Beckmann,
 Annie Ruth Hilton Crowley, Raymond Moody Crowley, Donald William Crowley,
 Harris L. Crowley, Jr., and Annie Ruth Crowley Atkinson are the Respondents.
 
 
 

Appeal From Charleston County
 Mikell R. Scarborough, Master-in-Equity

Unpublished Opinion No. 2009-UP-029
 Heard November 6, 2008  Filed January 14,
2009
Withdrawn, Substituted and Refiled April
21, 2009

AFFIRMED IN PART, REVERSED IN PART, 
AND REMANDED

 
 
 
 Richard D. Bybee and Stanley E. Barnett, of Mount Pleasant, John
 Hughes Cooper, of Sullivan's Island and Cain Denny, of Charleston, for
 Appellant.
 Stephanie P. McDonald, O. Benjamin Peeples, Jr., and Joseph S.
 Mendelsohn, of Charleston and Richard L. Whitt and Jefferson D. Griffith, III,
 of Columbia, for Respondents.
 
 
 

PER
 CURIAM:  The Milton P. Demetre Family Limited Partnership
 (Demetre) appeals two orders of the master-in-equity.  Demetre argues the
 master erred by determining the City of Folly Beach (Folly Beach) owned East Indian Avenue.  Demetre also argues the
 master erred by dismissing his claims for declaratory judgment, decree to quiet
 title, and an injunction and damages for trespass and nuisance.  We affirm in part, reverse in part, and remand.
FACTS
Most of the Island of Folly Beach, South
 Carolina was platted and subdivided by the Jefferson Construction Company in
 1920, and recorded in the Charleston County Register of Mesne Conveyance (RMC)
 Office.  Subsequently, in 1965 the 1920 plat was redrawn because of
 deterioration and in 1968 it was traced.  The redraw added parcels to the 1920
 plat; however, the tracing appears to be identical to the 1920 plat.  All three
 plats share the same book and page number at the RMC Office.
Between 1921 and 1925, the Folly Beach Improvement Company (FBIC)
 acquired the entire island of Folly Beach and mortgaged its complete interest
 to C & S Bank.  In 1937, the FBIC sold "all the streets, avenues,
 and/or lanes in and upon Folly Island" to the Board of Township Commission
 of Folly Island for the use of the public.  In 1942, C & S Bank foreclosed
 on the mortgage and the land was bought by Edward Seabrook, Sr., at a public
 auction.  The deed conveyed the island to Seabrook "[s]aving and excepting
 therefrom such lots and portions of land as have from time to time been
 conveyed to sundry parties by [FBIC] by deeds recorded in the RMC Office for Charleston County."[1]  
On May 30, 2002, Demetre purchased from Seabrook, Jr., a "portion
 of [East Indian Avenue] that is undeveloped and unpaved" bordering lots
 201 to 205 for $10,000 by quitclaim deed (the Road).[2]  Both the 1920 plat and the 1968
 redraw show a portion of East Indian Avenue extending from lot 201 to the
 northwest corner of lot 205.  Prior to purchasing the Road, Demetre's realtor stated he had a conversation with the Folly
 Beach mayor and city administrator in which they told him Folly Beach did not
 own the Road and suggested Demetre talk to Seabrook, Jr.[3] 
 Subsequently, Folly Beach asserted ownership of the Road.  As a result, on
 December 6, 2002, Demetre brought an action against Folly Beach to quiet title
 in Road, which borders other property Demetre owns (the Road case).  Emily
 Brown, who was allowed to intervene in the case, owns lot 204 on East Huron Avenue and has used the Road daily to access her property since January 30, 1986.
On January 23, 2004, Demetre bought two riverfront lots, 209 and
 210, on East Indian Avenue from Seabrook, Jr., for $23,700 by quitclaim deed.  The
 deed references the 1920 plat.  Demetre's lots are shown on the 1965 redraw,
 but they do not appear on the 1920 plat or the Charleston County tax map.  When
 Demetre purchased East Indian Avenue lots 209 and 210, two existing docks from East Huron Avenue lots 209 and 210 crossed over a portion of Demetre's lots to reach the water. 
 As a result, on October 7, 2005, Demetre brought an action against Annie
 Crowley, Raymond Crowley, Donald Crowley, Harris Crowley, Jr., and Annie
 Atkinson (the Crowleys),[4] and Harry and Patricia Beckmann (the Beckmanns) for declaratory judgment and to
 quiet title to lots East Indian Avenue 209 and 210, where the Crowleys' and
 Beckmanns' docks cross over the property (the Dock case).[5]  
The Crowleys purchased lot 210, East Huron Avenue, on September 1,
 1964, and the Beckmanns purchased lot 209, East Huron Avenue, on April 27,
 1972.  Both of their deeds referenced the 1920 plat, which shows no lots
 between their lots and the marsh abutting the river.  The Crowleys and
 Beckmanns both believed they owned all the property behind their homes down to
 the marsh.  Beckmann testified he believed everything from his property line to
 the Folly River was owned by the State.[6] 
 In 1988, both the Crowleys and the Beckmanns applied for permits from the South
 Carolina Coastal Council (Council) to construct docks from their lots north to
 the Folly River across East Indian Avenue lots 209 and 210.  Both permits were
 granted by the Council and the docks were constructed; however, they were
 destroyed by Hurricane Hugo in 1989 and rebuilt in 1990.
On the
 motion of the parties, these two cases were referred to a master-in-equity and
 consolidated on August 21, 2006.  The cases were tried on December 12, 2006. 
 On March 2, 2007, the master issued the Road Order, finding the Road was
 dedicated to the public and Folly Beach owned the Road.  On March 26, 2007, the
 master issued the Dock Order, ruling in favor of the Crowleys and the Beckmanns
 on all grounds.  Demetre timely filed Rule 59(e), SCRCP, motions in both cases,
 which were denied.  Demetre then timely appealed both orders to this court and
 we consolidated the appeals on September 13, 2007.
LAW/ANALYSIS

I. 
 The Road Case

 A. 
 Standard of Review

"The determination of whether a roadway has been
 dedicated to the public is an action in equity."  Mack v. Edens,
 320 S.C. 236, 239, 464 S.E.2d 124, 126 (Ct. App. 1995).  Therefore, we may find
 the facts in accordance with our own view of the preponderance of the evidence;
 however, we are not required to disregard the findings of the trial judge who
 saw and heard the witnesses and was in a better position to judge their
 credibility.  Cody Discount, Inc. v. Merritt, 368 S.C. 570, 574-75, 629
 S.E.2d 697, 699 (Ct. App. 2006).

 B. 
 Dedication  

Demetre
 argues the master erred by finding Folly Beach accepted the dedication by
 recording the deed.  We disagree.    
Dedication
 requires two elements: (1) intent to dedicate and (2) acceptance of the
 dedication.  Mack, 320 S.C. at 239, 464 S.E.2d at 126.  The intention of
 an owner to dedicate his property to public use must be expressed in a positive
 and unmistakable manner.  Horry County v. Laychur, 315 S.C.
 364, 368, 434 S.E.2d 259, 261 (1993).  "It is generally held that when the
 owner of land has it subdivided and platted into lots and streets and sells and
 conveys the lots with reference to the plat, he thereby dedicates the streets
 to the use of such lot owners, their successors in title, and the public."  Blue Ridge Realty Co. v. Williamson, 247 S.C. 112, 118, 145 S.E.2d 922,
 924-25 (1965).  "A recorded plat may be sufficient to disclose a landowner's
 intent to dedicate property to public use."  Van Blarcum v. City of N. Myrtle Beach, 337 S.C. 446, 450, 523 S.E.2d 486, 488 (Ct. App. 1999).  The burden of
 proving intent to dedicate is on the party asserting dedication.  Shia v.
 Pendergrass, 222 S.C. 342, 349, 72 S.E.2d 699, 702 (1952); Vick v. S.C.
 Dep't of Transp., 347 S.C. 470, 477 n.2, 556 S.E.2d 693, 697 n.2 (Ct. App.
 2001).  
Evidence
 of acceptance of a dedication must be by clear, convincing, and unequivocal
 proof.  Vick, 347 S.C. at 477 n.2, 556 S.E.2d at 697 n.2.  An express or
 implied public acceptance of the property offered for dedication must occur
 within a reasonable time.  Helsel v. City of N. Myrtle Beach, 307 S.C.
 24, 27, 413 S.E.2d 821, 823 (1992).  An acceptance of an offer of dedication
 may be implied by the public or the public authority's continuous use or
 maintenance of the property in some fashion.  Boyd v. Hyatt, 294 S.C.
 360, 365-66, 364 S.E.2d 478, 481 (Ct. App. 1988).  "Acceptance of
 dedication may be shown by use by a comparatively small number of persons, as
 in the case of a short street to the seashore."  23 Am. Jur. 2d Dedication § 50 (2002).  "The public use need not be constant, but merely continuous
 in light of the particular nature of the land."  Id.  Also, the
 non-assessment of taxes is a factor in the determination of dedication and
 acceptance.  Tupper v. Dorchester County, 326 S.C. 318, 327, 487 S.E.2d
 187, 192 (1997).
The
 1937 deed from the FBIC to the Board of Township Commission of Folly Island
 stated it was dedicating "all the streets, avenues, and/or lanes in and
 upon Folly Island" for the use of the public, which was properly
 recorded.  The foreclosure deed to Seabrook stated it was conveying to him the
 land "saving and excepting . . . such lots and portions of land as have
 from time to time been conveyed to sundry parties by Folly Beach Corporation
 and [FBIC] by deeds recorded in the RMC Office for Charleston County." 
 Also, the 1920 plat, which was referenced in Seabrook's deed, shows East Indian Avenue extending from lot 201 to the northwest corner of lot 205; and the Road
 is not included on the tax map.  Furthermore, Seabrook's quitclaim deed to
 Demetre references the 1920 plat.  
Additionally,
 evidence was presented at trial that the Road was paved at one time, and Folly
 Beach filled in pot holes on the Road, sprayed the Road for mosquitoes, and removed
 trees from the Road after Hurricane Hugo.  Brown also testified she and her
 family have used the Road daily for twenty years to access her property and the
 public uses the Road to park cars, jog, bike, and walk dogs.  Therefore, we
 find the master correctly held the Road was dedicated to Folly Beach by deed
 and plat, and Folly Beach accepted the dedication by using and maintaining the
 Road.

 C. 
 Equitable Estoppel

Demetre
 also argues the master erred by finding he did not satisfy the elements of
 equitable estoppel.  We disagree. 
"Government
 agents, acting within the scope of their authority, can by their acts give rise
 to estoppel against a municipality."  Landing Dev. Corp. v. City of Myrtle Beach, 285 S.C. 216, 221, 329 S.E.2d 423, 426 (1985).  Equitable estoppel is
 found to exist when the following elements are present: 

 (1)
 [C]onduct by the party estopped which amounts to a false representation or
 concealment of material facts or which is calculated to convey the impression
 that the facts are otherwise than and inconsistent with those which the party
 subsequently attempts to assert; (2) the intention or at least expectation that
 such conduct shall be acted upon by the other party; (3) knowledge, actual or
 constructive, of the true facts; (4) lack of knowledge or the means of
 knowledge of the facts by the other party; (5) reliance upon the conduct by the
 other party; and (6) a detrimental change of position by the other party
 because of his reliance.

McCrowey v. Zoning Bd. of
 Adjustment of City of Rock Hill, 360
 S.C. 301, 305, 599 S.E.2d 617, 619 (Ct. App. 2004).  The burden of proof lies
 with the party asserting an estoppel.  Pamplico Bank & Trust Co. v.
 Prosser, 262 S.C. 153, 159, 203 S.E.2d 110, 112 (1974).  
Demetre
 claims Folly Beach is estopped to repudiate its former interpretation of its
 ownership of the Road because he and his agent lacked the knowledge or means to
 know whether the city had formally or implicity accepted a dedication of the Road. 
 Demetre also claims his purchase of the property is evidence of his reliance
 and detrimental change in position based on their statements.  However, Demetre
 should have exercised further diligence in determining the true ownership of
 the parcels instead of simply relying on the alleged statements of the mayor
 and city administrator, especially because (1) there was initial confusion over
 the Road's ownership, (2) Seabrook only gave Demetre a quitclaim deed, (3) the
 price for the property was relatively inexpensive, and (4) the Road does not
 appear on the tax map.  Therefore, we find the master correctly determined
 Demetre did not satisfy the elements of equitable estoppel.    
II. 
 The Dock Case

 A. 
 Standard of Review

"A
 suit for declaratory judgment is neither legal nor equitable, but is determined
 by the nature of the underlying issue."  Felts v. Richland County, 303 S.C. 354, 356, 400 S.E.2d 781, 782 (1991).  "To make this determination we
 look to the main purpose of the action as determined by the complaint."  Estate
 of Revis v. Revis, 326 S.C. 470, 476, 484 S.E.2d 112, 115 (Ct. App. 1997).  When
 "the main purpose of the complaint concerns the determination of title to
 real property, it is an action at law."  Query v. Burgess, 371 S.C.
 407, 410, 639 S.E.2d 455, 456 (Ct. App. 2006); see also Wigfall v.
 Fobbs, 295 S.C. 59, 60, 367 S.E.2d 156, 157 (1988) ("The determination
 of title to real property is a legal issue.").  In an action at law tried
 by the master alone, our review is limited to correcting errors of law and we
 will affirm the master's factual findings if any evidence in the record reasonably
 supports the findings.  Lowcountry Open Land Trust v. State,
 347 S.C. 96, 101-02, 552 S.E.2d 778, 781 (Ct. App. 2001).

 B.  Ownership
 of the Property

Demetre
 argues the master erred by failing to make a determination that he owned all
 the property between the Crowleys' and the Beckmanns' lots and the mean high
 water mark.
"Historically,
 the State holds presumptive title to land below the high water mark."  McQueen
 v. S.C. Coastal Council, 354 S.C. 142, 149, 580 S.E.2d 116, 119 (2003); Hilton
 Head Plantation Prop. Owners' Ass'n, Inc. v. McDonald, 375 S.C. 220, 224,
 651 S.E.2d 614, 616 (Ct. App. 2007); see also Hobonny Club, Inc. v.
 McEachern, 272 S.C. 392, 396, 252 S.E.2d 133, 135 (1979) ("This Court
 has held that lands lying between the usual high water line and the usual low
 water line on tidal navigable watercourses enjoy a special or unique status,
 being held by the State in trust for public purposes.").  "One
 asserting title to this land must prove a specific grant from the sovereign[,]
 which is strictly construed against the grantee."  Coburg Dairy, Inc.
 v. Lesser, 318 S.C. 510, 512, 458 S.E.2d 547, 548 (1995).  
Demetre
 sought a declaration that he owns all the property between the Crowleys' and
 the Beckmanns' lots and the mean high water mark, and he sought to quiet any
 defects in his title to the land.  The master did not rule on either request
 and only held the Crowleys and the Beckmanns believed the State owned the land
 when they applied for their dock permits, which does not resolve the question
 of actual ownership.  Demetre does not dispute the presumption that the State holds
 in trust for public purposes the property below the mean high water mark.  Therefore,
 because the master failed to rule on Demetre's requests for a declaration of
 ownership and to quiet title to the portions of the lots above the high water
 mark, we remand this case to the master for a determination on this issue.

 C.  Other Issues

We
 need not address Demetre's remaining issues because we remand this case for a
 determination on whether Demetre owns the land between the Crowleys' and the
 Beckmanns' lots and the mean high water mark on lots 209 and 210 East Indian
 Avenue.
CONCLUSION
Therefore,
 we affirm the master's March 2, 2007 order finding
 Folly Beach owns East Indian Avenue and Demetre failed to satisfy the elements
 of equitable estoppel.  However, we reverse the master's March 26, 2007 order
 and remand for findings in accordance with this opinion.
AFFIRMED
 IN PART, REVERSED IN PART, and REMANDED.
HEARN,
 C.J., and SHORT and KONDUROS, JJ., concur.

[1] Seabrook, Sr., and his wife, Fannie, conveyed
 Seabrook's property to their son, Edward Seabrook, Jr., through the wills of
 Seabrook, Sr., who died in 1956, and Fannie, who died in 1960.
[2] Also, in 2002, Demetre bought lots 206 to 208 for
 $45,000 from Seabrook, Jr.; lots 202 to 205 for $475,000 from another seller;
 and "any and all interest in marshland or highland north of lot 201 Indian
 Avenue East" for $5 from a third seller.
[3] Demetre's realtor, Keith McCann, sent Demetre a
 letter stating the Folly Beach mayor and city administrator had determined
 Folly Beach did not own the Road.  He also stated the city officials suggested
 Demetre talk to Seabrook, Jr., who then offered to sell the land to Demetre. 
 However, at trial, the
 depositions of the mayor and city administrator were read into the record. 
 They both testified they did not remember telling Demetre or his realtor that
 Folly Beach did not own the Road.  
[4] Harris and Annie Crowley were the original owners of 210 East Huron Avenue; however, Harris died on April 26, 1995, leaving Annie Crowley with a
 life estate in the property and a fifty percent remainder interest in the
 property to Raymond Crowley, Donald Crowley, Harris Crowley, Jr., and Annie
 Atkinson.  The new deed was dated August 15, 1996.  
[5] The
 Crowleys and Beckmanns were permitted to intervene in the Road case because the
 rear of their lots abut East Indian Avenue.
[6] In fact, Demetre's October 7, 2005 complaint states portions
 of lots 209 and 210 on East Indian Avenue are "located within the critical
 area and; therefore, would require a permit for utilization from the South
 Carolina Department of Health and Environmental Control's Office of Ocean and
 Coastal Management."