**THIS OPINION HAS NO PRECEDENTIAL VALUE. IT SHOULD NOT BE CITED OR RELIED ON AS PRECEDENT IN ANY PROCEEDING EXCEPT AS PROVIDED BY RULE 268(d)(2), SCACR.**

**THE STATE OF SOUTH CAROLINA**
**In The Court of Appeals**

County of Florence and Thomas J. Hewitt, Respondents,

v.

Carol Eagerton, Appellant.

Appellate Case No. 2017-002519

_____

Appeal From Florence County
Thomas A. Russo, Circuit Court Judge

_____

Unpublished Opinion No. 2021-UP-342
Heard May 11, 2021 – Filed September 29, 2021

_____

**AFFIRMED**

_____

Rose Mary Parham, of Parham Law Firm, LLC, of
Florence, for Appellant.

D. Malloy McEachin, Jr., of McEachin & McEachin,
P.A., of Florence, for Respondents.

_____

**PER CURIAM:** Carol Eagerton appeals the trial court's determination that the public and the County of Florence (the County), by dedication or prescription, acquired the right to use and maintain Hewitt Cemetery Road as part of the County's road system. On appeal, Eagerton argues (1) the County did not prove by

clear and convincing evidence it legally acquired rights to Hewitt Cemetery Road by implied dedication and (2) the trial court erred in finding evidence established a prescriptive easement. We affirm.

Hewitt Cemetery Road is located in the County, runs north to south, and connects to two public roads—Cato Road to the north and Branch Road to the south. The road continues across Branch Road, but that portion of Hewitt Cemetery Road is private. Over the past seventy years, plats prepared by multiple parties have referred to Hewitt Cemetery Road by seven different names. Aerial photos spanning the same period depicting Hewitt Cemetery Road in its present and historical footprint show the road has not changed since 1965.

Eagerton is the owner of three tracts of land on Hewitt Cemetery Road: a 20.9-acre tract (Tract A), a 40.7-acre tract (Tract B), and a 12.51-acre tract (Tract C). Eagerton currently pays taxes on the portion of Hewitt Cemetery Road that runs through her property. In December 1981, Eagerton and her ex-husband purchased Tract A from Willie Mae Painter. The couple subsequently purchased Tract B from Painter in October 1988 and Tract C in April 2000. In 2004, revenue from the County paid for graveling the dirt road. Eagerton attempted to stop the graveling but was unsuccessful; in an attempt to restrict the public's access to the road, she erected gates in 2013 at both ends of the road. As a result, the County filed an action in 2013 seeking injunctive relief against Eagerton and a declaration that Hewitt Cemetery Road is a public road.

At trial, the County introduced eight plats—spanning forty-five years and prepared by four surveyors—and aerial photographs showing Hewitt Cemetery Road. Three of the introduced plats indicate Hewitt Cemetery Road as "County Maintained." Deeds in Eagerton's chain of title referenced the plats. The County introduced a deed received by Eagerton's ex-husband that references "Hewitt Cemetery Road, County maintained." No plat introduced at trial references a right-of-way to Eagerton's property via the road and no easements are recorded in Eagerton's deeds granting access to her property from either Cato or Branch Roads. However, the County did not present evidence showing an express grant of dedication by either Painter or Eagerton to the County.

The County called multiple witnesses to testify regarding the longstanding public usage of Hewitt Cemetery Road as well as the County's maintenance of the road over many years. According to Arthur Gregg, the director of the County's Public Works Department, when he became director in 1989, the County did not have an inventory of the roads it was maintaining. He explained the Public Works

Department relied on its road crews to remember which roads the County maintained. Gregg asserted the County had maintained Hewitt Cemetery Road since at least 1972. Gregg also addressed the County's lack of maintenance records. He explained that a flood destroyed some of the records and the department disposed of other maintenance records after "the archives said [the department] didn't have to retain [certain] records." Jerry Allen—a forty-year employee of the County's Public Works Department whose job encompassed maintaining all the dirt, paved, and graveled roads in the County—testified Hewitt Cemetery Road was included on a list of roads maintained by the County when he joined the department in the early 1980s. Allen stated he plowed Hewitt Cemetery Road once every two or three weeks when he oversaw the road. Additionally, multiple residents in the area testified they used the road regularly, witnessed other vehicles using the road, and observed the County maintaining the road. Many of the testifying residents were over fifty years old, and most had lived in the area since the 1970s. Finally, the County tax assessor explained Eagerton pays taxes on the portion of the road that runs through her property because that is the practice in the County regarding public roads. The trial court declared Hewitt Cemetery Road as a public road by virtue of dedication and prescriptive easement.

1. The trial court did not err in concluding Hewitt Cemetery Road had been impliedly dedicated. In the absence of an express dedication, the County proved Painter's and Eagerton's conduct convincingly indicated their intention to create a right for the public and the County to use the road. Eagerton asserts she did not impliedly dedicate the road; however, the County proved that it and the public accepted the implied dedication through continuous use and repair of the road. Residents and employees of the County testified the County had been maintaining Hewitt Cemetery Road since the early 1970s, when Painter owned the tracts bordering Hewitt Cemetery Road. Notably, a local citizen testified the County had been maintaining Hewitt Cemetery Road since the 1950s. The County also introduced maintenance records dating back to October 1981 and addressed the gaps in the maintenance records caused by environmental and clerical destruction. Finally, testimony demonstrated residents routinely used the road after Eagerton purchased Tract A in 1981 and until she erected gates in 2013. In total, the County presented sufficient evidence to convincingly establish either Painter or Eagerton impliedly dedicated the road for public use. *See Mack v. Edens*, 320 S.C. 236, 239, 464 S.E.2d 124, 126 (Ct. App. 1995) ("The determination of whether a roadway has been dedicated to the public is an action in equity."); *id.* ("Dedication requires two elements. First, the owner must express in a positive and unmistakable manner the intention to dedicate his property to public use. Second, there must be, within a reasonable time, an express or implied public acceptance of the property

offered for dedication." (citation omitted)); *Anderson v. Town of Hemingway*, 269 S.C. 351, 354, 237 S.E.2d 489, 490 (1977) ("[T]he burden of proof to establish dedication is upon the party claiming it."); *Vick v. S.C. Dep't of Transp.*, 347 S.C. 470, 477, 556 S.E.2d 693, 697 (Ct. App. 2001) ("South Carolina law recognizes two types of implied dedication—'one where the question of implied dedication arises from the sale of land with reference to maps or plats; the other when the dedication arises . . . from an abandonment to or acquiescence in public use.'" (alteration in original) (quoting *Shia v. Pendergrass*, 222 S.C. 342, 347, 72 S.E.2d 699, 701 (1952))); *Boyd v. Hyatt*, 294 S.C. 360, 364, 364 S.E.2d 478, 480 (Ct. App. 1988) ("An intention to dedicate may be implied from the circumstances."); *id.* ("Any act or declaration on the part of the dedicator which fully demonstrates his intention to appropriate [his] land to public use, or from which a reasonable inference of his intent to dedicate may be drawn, is sufficient." (alteration in original) (quoting 23 Am. Jur. 2d *Dedication* § 27 (1983))); *id.* ("However, absent an express grant, one who asserts a dedication must demonstrate conduct on the part of the landowner clearly, convincingly[,] and unequivocally indicating the owner's intention to create a right in the public to use the property in question adversely to the owner."); *Mack*, 320 S.C. at 239, 464 S.E.2d at 126 ("[T]he intent to dedicate may be implied from allowing lengthy public use of the land."); *id.* ("[D]edication may not be implied from the permissive, sporadic, and recreational use of property."); *id.* ("The record must contain evidence the owner of the property clearly, convincingly, or unequivocally intended to dedicate the property for public use."); *id.* ("Acceptance may be implied by the public or a public authority continuously using or repairing the property."); *Anderson*, 269 S.C. at 356, 237 S.E.2d at 491 ("The fact that respondent paid taxes on the disputed property *may* thus be considered as evidence contrary to an intent to dedicate the street to the public." (emphasis added)).

2. We decline to address the trial court's prescriptive easement determination because the trial court's implied dedication determination resolves this case. *See Futch v. McAllister Towing of Georgetown, Inc.*, 335 S.C. 598, 613, 518 S.E.2d 591, 598 (1999) ("In light of our disposition of the case, it is not necessary to address [a party's] remaining issues.").

**AFFIRMED.**

**KONDUROS, GEATHERS, and MCDONALD, JJ., concur.**