## WHALEY v. STEVENS.

1. The distinction between a right of way in gross, and one appurtenant, is marked and important, the former being a personal privilege which dies with the possessor, while in the latter it inheres in the land to which it is appurtenant, is essentially necessary to its enjoyment, and passes with it; and a right of way appurtenant must have a *terminus* on the land to which appurtenant.
2. Plaintiff alleged a right of way *from* a public road bounding his plantation across defendant's lands to a boat landing, and that the right of way was for the use of plaintiff's plantation and those connected with it. *Held,* that this was an allegation of a right of way in gross.
3. An amendment to the complaint by inserting an allegation that the right of way begins on plaintiff's land, would substitute a claim of a right of way appurtenant for that of a right of way in gross, and so substantially change the claim. Such amendment, therefore, cannot be allowed.

MR. JUSTICE McGowan dissented.

Before COTHRAN, J., Charleston, March, 1883.

The opinion sufficiently states the case.

*Messrs. Simonton & Barker* for appellant.

*Mr. Charles Inglesby* contra.

April 26, 1884.   The opinion of the court was delivered by

MR. JUSTICE McIVER.   The plaintiff seeks, by this action, to recover damages for the obstruction of a private way which he claims to be entitled to over the land of the defendant, and also to obtain an order restraining the defendant from continuing such obstruction.   It will be difficult, if not impossible, to make an intelligible statement of the facts of the case, without reference to the diagram incorporated in the record, which cannot be introduced here, but which should be embraced in the report of the case.   But from the view which we take, it will not be necessary to go fully into the facts of the case.

The plaintiff is the owner of a plantation of John's Island known as "Caneslatch," which was devised to him by his father, Wm. S. Whaley, who died in July, 1872, and the defendant is

the owner of another plantation on said Island known as "Seven Oaks," which he acquired by purchase from John H. Screven and wife in 1853. Caneslatch plantation originally lay to the west of the public road to John's Island Ferry, and separated from said road by a portion of Seven Oaks plantation, which lay mainly to the east of said road, between it and Stono River, but extended across said road and joined Caneslatch. Soon after the defendant bought Seven Oaks, and in the same year, he conveyed 300 acres of it lying west of the public road to the plaintiff's father, thus leaving all of the Seven Oaks plantation retained by him lying east of the public road, except the portion designated on the diagram "pine land," on the west side of the road.

The plaintiff, in his complaint, after alleging that he was the owner of Caneslatch plantation, "containing about 600 acres of land, bounding on the east on a public road on said Island," proceeds to allege "that the said plaintiff had a right of way, by means of a road leading from the said public road over the adjoining land of the said defendant, known as the Seven Oaks plantation, to a creek leading into the said Stono River, with horses, carts, carriages, and other vehicles; and further had the right to keep at the landing on said creek such boat or boats as he might desire, and that the right of way was for the use of the said Caneslatch plantation and those connected with it." The defendant in his answer admits that plaintiff is the reputed owner of Caneslatch plantation, "but he denies that he had a right of way by means of a road leading from the public road which bounds the said plantation, over the adjoining land of the defendant, known as the Seven Oaks plantation, to a creek leading into Stono River, * * and he denies that the plaintiff had the right to keep at the landing on said creek such boat or boats as he might desire, and he denies that the right of way, or any right of way, was for the use of the said Caneslatch plantation and those connected with it," &c.

The issue thus distinctly presented by the pleadings was whether the plaintiff was entitled to a right of way *leading from the public road* which constitutes the eastern boundary of Caneslatch plantation to the creek which empties into Stono River.

Cane

Road used by W. S. Whaley before 1853.

Mair's Land.

Slatch plantation.

Exchange

Waterloo

300 acres sold by
Dr. Stevens to Mr.
W. S. Whaley of
Seven Oaks in 1853.

Land.

Pine

PUBLIC ROAD TO JOHN'S ISLAND FERRY.

"HEADQUARTERS"
Old Fenwick place, now Peck's.

Dr. Stevens' residence.

ROAD IN DISPUTE.

Road between "Exchange" and Burden's.

Plantation.

Plantation.

Seven Oaks Plantation.

Burden Plantation.

Landing.

Creek.

STONO RIVER.

N.

A right of way may be in gross, or it may be appendant or appurtenant to land, and the distinctions between the two kinds of rights are very marked and important. In the former, it is a mere personal privilege, which dies with the person who may have acquired it; while in the latter it inheres in the land to which it is appurtenant, is essentially necessary to its enjoyment, and passes with it. An essential feature of a right of way appurtenant is that it must have one of its termini *on the land* to which it is claimed to be appurtenant.

In view of these undisputed and indisputable legal propositions, what was really the issue presented by the pleadings in this case? Was it anything more than an issue whether plaintiff was entitled to a right of way in gross over the land of the defendant? Can it, by the most liberal construction of the pleadings, be regarded as an issue whether the plaintiff was entitled to a right of way appendant or appurtenant to his Caneslatch plantation? There is no such allegation in the complaint, for certainly the allegation that the right of way claimed "was for the use of the said Caneslatch plantation and those connected with it" cannot be regarded as sufficient, for such an allegation would be equally appropriate to claim of a right of way in gross as to a right of way appurtenant. There is no allegation that the way was necessary for the enjoyment of the land known as Caneslatch, or that it was in any way appendant or appurtenant thereto.

But a more fatal objection is that, in describing the right of way in question, it is not alleged that it begins on the Caneslatch plantation, or that it even leads from said plantation. Indeed, from the description of the way as given in the complaint, it does not appear that it touches Caneslatch plantation at any point or reaches to it. The allegation is, "leading *from* the public road," &c. Now, even adopting the theory that the public road being the boundary of Caneslatch plantation on the east, the plaintiff owns to the middle of the road, still the complaint cannot be construed as alleging that the way in question has one of its termini on the Caneslatch plantation; for as the creek, which is one of the termini named, lies east of the public road, and as the defendant owns the land adjoining the road on the east, and consequently the eastern half of said road, the western as well as

the eastern terminus of the way, as described in the complaint, would be on the land of the defendant, and not on the land of the plaintiff. In *Northeastern Railroad Company* v. *Payne*, 8 *Rich.*, 177, a point which seems to be identical with this was decided. The charter of the company authorized the construction of a railroad *from* Charleston, and it was held that *from* was a word of exclusion, and could not be construed to mean *from within*, and therefore the charter of the company did not allow it to cross the boundary line of the city. It seems to us, therefore, that the only issue presented by the pleadings was whether the plaintiff was entitled to the right of way as an easement in gross, and when he failed, as it is manifest he did, to establish any such right of way, the complaint should have been dismissed or the jury directed to find a verdict for the defendant.

It is claimed, however, by the respondent that if we should take this view of the case, then he should be allowed to amend his complaint by inserting an allegation that the right of way begins on the Caneslatch plantation. It is very true that the provisions of the code in respect to amendments are very liberal, but there is one qualification in this respect, and that is that the amendment asked for "does not change substantially the claim or defence." *Code of 1882*, § 194. So that the inquiry is, does the proposed amendment change substantially the claim of the plaintiff? It appears to us that it does. As we have seen, the claim set up in the complaint is a claim to a right of way in gross, and the amendment asked for is to change that claim into a claim to a right of way appurtenant to the land of the plaintiff. These two rights differ *substantially*, not in form merely, but in their nature and results. The violation of these rights present different and distinct causes of action, which would have to be asserted and established by different and distinct allegations and proofs, and hence we think the proposed amendment would change substantially the claim set up in the complaint, and cannot be allowed.

The judgment of this court is that the judgment of the Circuit Court be reversed, and that the complaint be dismissed.

MR. CHIEF JUSTICE SIMPSON concurred.

MR. JUSTICE MCGOWAN *dissenting.* I cannot concur in the judgment pronounced by my brethren in this case. It seems to me that the statements of the complaint that the land of plaintiff bounded on the public road, and that he had a right of way leading *from* the same public road over the adjoining land of the defendant, amounted substantially to an allegation of right of way *connecting* with his lands. But if held strictly and literally not to be such allegation because of the public road running on the line and interposing an imaginary obstacle, the plaintiff should have leave to amend his complaint. That would not, in my judgment, violate the rule that an amendment should not "change substantially the claim or defence." The plaintiff manifestly intended to claim a right of way appurtenant to his plantation as stated "for the use of the said Caneslatch plantation and those connected with it," and therefore an amendment would not change the nature of the claim, but simply enable him to make perfect his imperfect allegations, which is the very object of amendment.

Judgment reversed.