16674

SHIA v. PENDERGRASS
(72 S. E. (2d) 699)

*Messrs. McEachin, Townsend & Zeigler,* all of Florence, *for Appellant,*

*Messrs. Scott & Tyson* and *Keels & Hyman,* of Florence, *for Respondent.*

October 6, 1952.

FISHBURNE, Justice.

The complaint states a cause of action for injunctive relief against the respondent, from entering upon, trespassing on. and interfering with the appellant in the use and possession of a certain strip of land constituting part of a lot owned by her in the City of Florence.

The respondent by answer sets up two defenses: (1) That the strip of land in question constitutes an alleyway dedicated

to the use of the public and to the City of Florence by the former owner, Mrs. C. M. Berry; (2) That the respondent has a right of way over the said driveway which is appurtenant to his property by right of prescription.

The cause was heard by the trial judge without a reference, and testimony was offered by both sides. The court decided that the respondent had no right to use the alleged alley as an appurtenant easement by prescription, but held that there has been a dedication of this strip of land by appellant's predecessor in title, for the use of the general public.

We will first discuss whether the repondent successfully sustained the burden of proving that the use of this passageway by the public established a dedication.

The record shows that the appellant is the owner of a lot of land purchased from the heirs of Catherine M. Berry on December 22, 1947; it was a part of a larger lot owned by Mrs. Berry from the year 1918, or prior thereto, until she died in 1947. This lot is bounded on the north by the right of way of the Atlantic Coast Line Railroad Company; on the east by what has been designated as Buchheit alley; on the south by lands of the estate of Mrs. C. M. Berry; and on the west by the lots now owned by the respondent, formerly of Stackley. The strip of land in dispute constitutes the western portion of appellant's lot.

The respondent is the owner of two adjoining lots of land, one purchased on March 8, 1946 from Mrs. Coward; the other on June 7, 1946 from J. M. Rainwater, who purchased from Mrs. Hurst. Mrs. Coward and Mrs. Hurst are daughters of George Stackley, who died in 1930, and he was their immediate predecessor in title. Until his death, he was the owner of the respondent's two lots and two adjoining lots to their north, as shown on a plat or map of a portion of the Berry estate surveyed October 20, 1947 by A. L. Ervin, Civil Engineer.

The two lots which were conveyed to respondent were originally occupied by two store buildings. He has made one building of the two, wherein he is now operating a grocery store. The property of the respondent is bounded on the north by the right of way of the Atlantic Coast Line Railroad Company; on the east by appellant's lot; south by the estate of Mrs. C. M. Berry; and west by North Dargan Street. His store building fronts on Dargan Street on the west and extends back eastwardly within about three feet of his rear line.

Just to the east of respondent's property line on the rear lies the lot of appellant. Prior to appellant's purchase from the Berry estate, Mrs. Berry built a tin warehouse, about 1918, on what is now appellant's lot, which has a driveway about twelve feet wide adjoining it on its western side, extending from the Atlantic Coast Line Railroad Company right of way on the north to the southern line of appellant's lot. The loading and unloading doors of the warehouse face on this driveway to the west. The rear line of respondent's lots (appellant's western line) is adjacent to the driveway, and there is a door—the rear door of respondent's store—which opens on the driveway. It is this strip of land about 12 feet wide which admittedly belonged to Mrs. Berry and which forms a part of the lot conveyed by her to appellant, which gives rise to the controversy in this case.

Several other stores to the north and to the south of respondent's store, like his, front on North Dargan Street, and extend back to this alleged alleyway.

Prior to the appellant's purchase, the warehouse property was rented by Mrs. Berry to various tenants over a period of more than twenty years. These tenants used the twelve foot driveway constantly and uninterruptedly for warehouse purposes. Tenants and customers of the stores owned by Stackley (respondent's predecessor in title) were permitted to use it for loading and unloading merchandise at their rear doors. The evidence shows that the only way that vehicles

can reach the rear of respondent's store is by the use of the twelve foot driveway in question.

Appellant's deed describes her western boundary as property formerly of Stackley, a part of which is now owned by respondent. The two deeds by which respondent acquired his two lots do not mention the eastern boundary by way of an easement or an alley.

The civil engineer, Mr. Ervin, stated that he was thoroughly familiar with every lot in the block, including the property of appellant and respondent. He testified that in all of his inspections for surveys and actual surveys made in this block over a period of forty years, he had never heard of an alley in the place claimed by respondent. That customers of respondent's store and other stores were permitted to use the driveway for the purpose of entering the rear doors, and the trucks made use of the driveway and the vacant property belonging to Mrs. Berry immediately to the south, in order to reach the rear of these stores for the purpose of loading and unloading merchandise.

D. C. Barbot, City Manager, said there was no authorized alleyway back of the respondent's store, but that this area was used as a traveled way by people having business with the stores; that the city had never accepted or maintained any alleyway there. Many other witnesses testified that the only use made of the driveway was for business purposes by that special class of the public who had occasion to enter the rear of those stores which abutted thereon.

The evidence shows that respondent was offered the opportunity to buy the warehouse property before appellant purchased it, and was warned of the consequences if it should be owned by some one else. He was told and shown that he had only about three feet from the door on the rear of his store to his property line,—the remaining width of twelve feet constituting the alleged alleyway being a part of the property subsequently purchased by appellant from the Berry estate. He refused to buy and stated that he would

not like to be inconvenienced, but .if he was inconvenienced he would have to load and unload merchandise from the front of his store on Dargan Street as best he could. He made no claim at that time about an easement or alley at the back of his store.

The whole evidence, in our opinion, can give rise to but one reasonable inference, and that is, that this twelve foot strip of land was used primarily by the tenants who rented the warehouse on Mrs. Berry's lot, now owned by appellant; and that such use of it as was made by the public or a certain class of the public having business with the stores abutting thereon, was only by and through the permission of Mrs. Berry, without the vesting of any acquired rights thereto. It should be noted too, that all of the property here involved—the lots fronting on North Dargan Street (two of which are now owned by respondent), and the adjoining property to the east and south—belonged for about two generations to closely related members of the same family. Mrs. Berry, appellant's predecessor in title, was a sister of George Stackley, who owned the two lots of respondent for many years. It may be inferred that it was only natural that Mrs. Berry would have permitted him and his tenants to make such use of the warehouse driveway as was convenient to them. There is no suggestion in the evidence that this use was adverse to that of Mrs. Berry.

The cases bearing upon the subject of dedication of a street or alleyway, generally are divided into two classes— one dealing with the nature and requisites of express dedication and formal acceptance; and the other with the nature and requisites of implied dedication and implied acceptance. Upon the latter questions the cases are also of two classes: one where the question of implied dedication arises from the sale of land with reference to maps or plats; the other when the dedication arises, as claimed in this case, from an abandonment to or acquiescence in public use. It is this latter branch of the subject of dedication with which we are now concerned.

There is no contention by respondent that there was an express dedication, either in writing or orally. On the other hand, the appellant contends that there has never been any such conduct on her part or upon the part of her predecessor in title in connection with this strip of land, as would imply a dedication thereof to the public.

It must be borne in mind that title to real estate, or any interest therein, is ordinarily passed by deed or will, and, while one may lose his land without an actual conveyance of the same, the acts and conduct upon his part, and upon the part of the one claiming to have acquired such title in such way, must be so unequivocal and positive as to leave little doubt that it was the intention of the owner to dedicate the same to the public use. By this we do not mean that the expression of such an intent upon the owner's part need be proven, but his acts and conduct in regard to the property must be of such character that the public, dealing with him upon the strength of such conduct, could not but believe that his intention was to vest an easement therein in the public. The length of time a road or driveway has been used is of no material consequence, unless it becomes important, in connection with other circumstances, to show an intention on the part of the owner of the land to dedicate it to public use.

As was said by the Supreme Court of California in *City and County of San Francisco v. Grote,* 120 Cal. 59, 52 P. 127, 128, 41 L. R. A. 335, 65 Am. St. Rep. 155: "It is not a trivial thing to take another's land, and for this reason the courts will not lightly declare a dedication to public use."

Our Court, in *Seaboard Air Line R. Co. v. Fairfax,* 80 S. C. 414, 61 S. E. 950, 956, quoting with approval from 13 C. Y. C., page 476, has announced the same rule in these words:

"Dedications being an exceptional and a peculiar mode of passing title to interest in land, the proof must usually be strict, cogent, and convincing, and the acts proved must

not be consistent with any construction other than that of a dedication."

As was stated in *Town of Estill v. Clarke,* 179 S. C. 359, 184 S. E. 89, 90:

"Now, in order to establish title by dedication in cases where there had been no express gift of the land involved, it is incumbent on the party asserting that a dedication exists to show that the conduct of the owner, relied on to establish it, clearly, convincingly, and unequivocally indicates, expressly or by plain indication, a purpose or intention to create a right in the public to use the land adversely to him and as of right."

And the same rule is expressed in the case of *Grady v. City of Greenville,* 129 S. C. 89, 123 S. E. 494.

It is said in 26 C. J. S., Dedication, § 18, page 74, that "In order to acquire a public easement, the user must be by the public at large," and not by a limited number of persons.

It is argued by respondent that Mrs. Berry's conduct in connection with and treatment of this twelve foot strip of land for more than twenty years was such as to indicate the clear intent and purpose upon her part to dedicate it to the public for public use; while the appellant contends that the conduct of Mrs. Berry, her predecessor in title, was entirely consistent with the permissive use thereof by the public. As already shown, the only thing which has been done by the owner of the property upon which an implied dedication can rest, is that they permitted a certain class of the public to use this strip of land.

From the authorities which we have cited, it would seem clear that to create a dedication by implication, the owner of the real estate must have done some act from which a positive intent on his part to dedicate the land to the public can be drawn. It is elementary law that an intention to dedicate must be plainly manifest. Here, there is no such manifest intention. No single act of Mrs. Berry can be pointed out as so indicating. The fact that the

public was allowed to use the strip of land under circumstances such as exist here, without objection by the owner, is not sufficient from which to imply a dedication. During all of the time that the public has been permitted to use this driveway now in dispute, the appellant and Mrs. Berry, under whom she claims, have paid the taxes thereon to the City of Florence; and while this of itself is not generally treated as very strong evidence, still it is some evidence that they did not intend to dedicate it to the public.

The respondent, by evidence far from convincing, attempts to show that the alleged alley or strip of land to which we have been referring continues on south after it leaves the southern boundary of appellant's property. It is argued that it pursues a winding, circling course over a large vacant area, and finally, after about 150 feet, connects in the form of a "U" with what is known as Buchheit's Alley, which proceeds north and connects with the right of way of the Atlantic Coast Line Railroad Company. Buchheidt's Alley is east of the tin warehouse located on appellant's property. It is contended that this alleged U-shaped alley has its commencement on the western boundary of appellant's property, the entrance to which is gained from the right of way of the Atlantic Coast Line Railroad Company toward North Dargan Street, and is used by the public throughout its meandering and interrupted course. In our opinion, such a way has few if any characteristics of an alley.

The record shows that after the death of Mrs. Berry and Mrs. Buchheit, who were sisters, their heirs conveyed to the City of Florence a twelve foot alley east of appellant's property, apparently as a part of the municipal parking area then established. This parking area was established by the city by leasing from various owners the rear portions of their business lots on North Dargan Street and East Evans Street. No reasonable inference can be drawn from the evidence that the city or the public claimed or had any right to the strip of land owned by appellant, constituting the western portion of her lot, and acquired by her from the Buchheit-Berry heirs.

The respondent appeals from that portion of the circuit decree which holds that he has no right to the use of the strip of land in controversy by way of an appurtenant easement. As stated in the lower court's order, an essential feature of an appurtenant easement or way is that it have one of its termini on the dominant property. In the case of *Steele v. Williams,* 204 S. C. 124, 28 S. E. (2d) 644, 647, the court quoted the following from *Brasington v. Williams,* 143 S. C. 223, 141 S. E. 375, 382:

"An easement is either 'appurtenant' or 'in gross.' An appendant or appurtenant easement must inhere in the land, concern the premises, have one terminus on the land of the party claiming it, and be essentially necessary to the enjoyment thereof. It attaches to, and passes with, the dominant tenement as an appurtenance thereof. An easement, or right of way, in gross is a mere personal privilege to the owner of the land and incapable of transfer by him, and is not, therefore assignable or inheritable."

The same rule was announced in *Richards v. Trezvant,* 185 S. C. 489, 194 S. E. 326. And to the same effect see *Poole v. Edwards,* 197 S. C. 280, 15 S. E. (2d) 349.

The evidence fails to establish that the alleged right of way has a terminus on respondent's lot, and the absence of a terminus on his property is fatal to his claim to an appurtenant easement.

Furthermore, in order to establish a private right of way by prescription over the lands of another, the use and enjoyment thereof by the claimant must be shown to be adverse, under a claim of right, exclusive, continuous, uninterrupted, and with the knowledge and acquiescence of the owner of the land over which it is claimed. And such use and enjoyment must continue for a period of at least twenty years. *Babb v. Harrison,* 220 S. C. 20, 66 S. E. (2d) 457. The evidence does not satisfy any of the foregoing requirements.

It is generally held that the use and enjoyment of a way in common with the public, as shown by the record in this

case, is not exclusive within the meaning of that term nor used in reference to the acquisition of a private right of way by a prescription. *Stanley v. Mullins*, 187 Va. 193, 45 S. E. (2d) 881; *Pirman v. Confer*, 273 N. Y. 357, 7 N. E. (2d) 262, 111 A. L. R. 216, and the Annotation in the latter volume beginning at page 221.

Finding, as we do, that the state of facts disclosed by this record is not sufficient to show an implied dedication of this strip of land to the public, the decree of the trial court on this issue must be reversed. And the injunction originally granted, prohibiting the respondent from trespassing on, entering upon, or in any way molesting or disturbing the appellant in the full use, possession and occupancy of the twelve foot strip of land in controversy, should be made permanent.

Judgment reversed

BAKER, C. J., and STUKES, TAYLOR and OXNER, JJ., concur.