WILLIAMS, J.:
**254 In this civil matter, James Bradley Williams and Robert Blair Kline, Jr. (collectively, Appellants) appeal the master-in-equity's order denying their motion for summary judgment and granting Merle Tamsberg's motion for summary judgment. On appeal, Appellants argue the master erred in (1) finding the easement encumbering Appellants' property, 45 Legare Street, was an easement appurtenant rather than an easement in gross; (2) finding the 1971 restrictive covenant, given by Appellants' predecessor-in-title, was valid and runs with the land; and (3) finding Appellants' claims were barred by the statute of limitations. We affirm.[1]
FACTS/PROCEDURAL HISTORY
This appeal arises from a dispute regarding a recorded easement in Charleston, South Carolina. The easement is an eight-foot-wide alley or driveway, which encumbers the servient parcel located at 45 Legare Street (45 Legare) currently owned by Appellants. The easement benefits the adjacent, dominant parcel at 47 Legare Street (47 Legare) currently owned by Tamsberg. W.G. Hinson previously owned both parcels as one property, but in 1911, Hinson divided his property into two adjacent lots, a southern parcel, 45 Legare, and a northern parcel, 47 Legare.[2] In an April 15, 1911 deed (the 1911 Deed), Hinson conveyed 47 Legare to his niece, Julia Dill, while reserving 45 Legare for himself. The 1911 Deed included the following clause:
Also, the full and free use and enjoyment as an easement to run with the land of the right of ingress, egress, and regress, in, over, through[,] and upon the alley-way eight (8) feet wide as a drive way or carriage way, situate, lying[,] and being immediately to the south of [47 Legare], and being the southern boundary of said [47 Legare].
The easement described in the 1911 Deed was located entirely on 45 Legare and ran from Legare Street to the **255 western lot line that bordered the Saint Peter's graveyard wall. Subsequently, title to both 45 Legare and 47 Legare passed to different owners.[3] On April 5, 1971, the Bank-having title to 47 Legare at the time as executor of Julia's estate-and Black-owner of 45 Legare at the time-executed and recorded simultaneous documents, in which the Bank conveyed the western, rear portion of the easement to Black by deed and in which Black executed a restrictive covenant (the Covenant) that sought to reaffirm the existence of the original easement, "to the extent as agreed upon by the parties,[4 ] by execution of *498 the within covenant." In their respective documents, both Black and the Bank provided verbatim descriptions of the original easement from the 1911 Deed and referenced a 1971 Cummings & McCrady, Inc. plat of 47 Legare (Cummings & McCrady plat), which showed both the area of 45 Legare encumbered by the easement to 47 Legare and the western, rear portion of the easement sold to Black. The Covenant also provided the following:
Black, the owner in fee simple of [45 Legare], hereby covenants and agrees that the strip of land located on the west side of Legare Street in the City of Charleston, State of South Carolina, being eight feet in width and 101.25 feet in depth and being more particularly shown on [the Cummings & McCrady plat], as enclosed within the letters, B, E, F, H, B, the line F, H being the terminus thereof, shall be **256 subject to the following restrictions, limitations[,] and rights as to the future use of said strip of land:
(1) That no building or other structure shall be erected thereon.
(2) That no obstruction shall be placed or permitted to remain thereon so as to prevent the right of ingress, egress, and regress, in, over, or through, and upon the said strip of land as a driveway or carriageway to the owner of [47 Legare].
The aforesaid covenants, restrictions[,] and limitations shall be covenants running with the land and shall be binding on Margarette deSaussure Black, her heirs, assigns[,] and successors in title.
Tamsberg's deed to 47 Legare-and the deed to her predecessor-in-title-included the following provision with the conveyance of the property on 47 Legare:
Together an easement, to run with the land, over an adjoining strip of land shown on [the Cummings & McCrady] plat as enclosed within the letters B, E, F, H, and B, for ingress, egress, and regress, in, over, or through, and upon the said strip of land as a driveway or carriageway for the owner of [47 Legare] described above, as conveyed by W.G. Hinson less a portion shown on [the Cummings & McCrady] plat within the letters F, G, C, H[,] and F, .... The strip covered by said easement is also covered by restrictive covenants ....
Appellants' deed to 45 Legare, however, did not contain the same provision, but did include a clause subjecting 45 Legare's title to all easements and restrictions of record.
Appellants acknowledged they were aware of the easement at or near the time they obtained title to 45 Legare in 2004. However, Appellants considered the easement abandoned because, in 2004, Tamsberg finished replacing a chain-link fence with a masonry wall that ran alongside the border of 45 Legare in the area where the easement previously extended. The wall contained a three-to-four foot gate, which provided access to 47 Legare from the easement on 45 Legare and was **257 located near the site of a former garage that previously existed in the rear of 47 Legare.[5]
Appellants indicated the easement "was never used as a carriage way" or used by Tamsberg, herself. Instead, Appellants stated "the only time [the easement] was ever used" was to allow Tamsberg's landscapers to walk down the driveway to use the gate.[6] Tamsberg, however, claimed she-as well as family members, guests, "tradesmen, and other permittees"-continuously used the easement since she purchased 47 Legare in 1988 because it provided the only access to the rear of 47 Legare for large-scale appliances, equipment, and machinery; and because it provided access to the only suitable area for off-street parking for her property. Tamsberg also claimed she had driven a golf cart down the easement and parked in the rear of 47 Legare.
Appellants claimed that in 2014, ten years after they purchased 45 Legare, Tamsberg approached and informed them that their fence-erected in the easement-"[was] coming down" and she would be using their *499 "driveway as easement to the back."[7] Appellants filed a complaint in Charleston County in September 2014, and subsequently amended their complaint in September 2015. In their amended complaint, Appellants requested: (1) a declaratory judgment ruling that the easement was abandoned, the Covenant was abandoned, and the burdened property should revert to Appellants; (2) injunctive relief preventing Tamsberg from removing Appellants' fence; (3) that the circuit court find the grant of the easement described in the 1911 Deed and the Covenant was an easement in gross that could not be transferred, and as a result, that the easement terminated as a matter of law; and (4) that the circuit court find that each instance of Tamsberg using the easement was a separate act of trespass because Tamsberg used the easement as a walkway, which was outside the scope **258 of the easement's intended use as a carriage or driveway. The parties consented to reference to the master, and later, filed cross motions for summary judgment under Rule 56, SCRCP. The master held a hearing on Appellants' motion for summary judgment on March 2, 2016, and held a hearing on Tamsberg's motion for summary judgment on March 16, 2016. On March 29, 2016, the master filed an order granting Tamsberg's motion and denying Appellants' motion. This appeal followed.
ISSUES ON APPEAL
I. Did the master err in finding the easement in question was an easement appurtenant and not an easement in gross?
II. Did the master err in finding the restrictive covenant given by Appellants' predecessor-in-title in 1971 was valid and runs with the land?
III. Did the master err in finding Appellants' claims barred by the statute of limitations?
STANDARD OF REVIEW
"An appellate court reviews a grant of summary judgment under the same standard applied by the [circuit] court pursuant to Rule 56, SCRCP." Lanham v. Blue Cross & Blue Shield of S.C., Inc. , 349 S.C. 356, 361, 563 S.E.2d 331, 333 (2002). Summary judgment shall be granted when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that ... no genuine issue [exists] as to any material fact and that the moving party is entitled to a judgment as a matter of law." Rule 56(c), SCRCP. When determining whether triable issues of material fact exist, the court must view the evidence and all reasonable inferences in the light most favorable to the nonmoving party. Fleming v. Rose , 350 S.C. 488, 493-94, 567 S.E.2d 857, 860 (2002). "Summary judgment is not appropriate whe[n] further inquiry into the facts of the case is desirable to clarify the application of the law." Lanham , 349 S.C. at 362, 563 S.E.2d at 333.
Determining whether an easement exists is a question of fact in a law action, and when tried by a judge without a jury, is subject to an "any evidence" standard of review.
**259 Tupper v. Dorchester Cty. , 326 S.C. 318, 323, 487 S.E.2d 187, 190 (1997). "However, the determination of the extent of a grant of an easement is an action in equity." Id. "The distinction between an appurtenant easement and an easement in gross involves the extent of a grant of an easement, as opposed to the creation of an easement." Proctor v. Steedley , 398 S.C. 561, 571, 730 S.E.2d 357, 362 (Ct. App. 2012). Thus, when a party appeals a judgment pertaining to the extent of an easement, the appellate court may take its own view of the preponderance of the evidence. In re Estate of Kay , 423 S.C. 476, 816 S.E.2d 542 (2018). However, an appellate court still affords a degree of deference to the master because of his superior position to judge the witnesses' credibility. Id. Therefore, "the appellant is not relieved of his burden of convincing the appellate court the [master] committed error in his findings." Pinckney v. Warren , 344 S.C. 382, 387-88, 544 S.E.2d 620, 623 (2001).
*500 LAW/ANALYSIS
Appellants argue the master erred in finding an appurtenant easement to 47 Legare and not an easement in gross to Julia. We disagree.
"An easement is a right given to a person to use the land of another for a specific purpose." Bundy v. Shirley , 412 S.C. 292, 304, 772 S.E.2d 163, 169 (2015). An easement may be created by an express written grant. Sandy Island Corp. v. Ragsdale , 246 S.C. 414, 419, 143 S.E.2d 803, 806 (1965). "A reservation of an easement in a deed by which lands are conveyed is equivalent, for the purpose of the creation of the easement, to an express grant of the easement by the grantee of the lands." Id. "A grant of an easement is to be construed in accordance with the rules applied to deeds and other written instruments." Binkley v. Rabon Creek Watershed Conservation Dist. of Fountain Inn , 348 S.C. 58, 71, 558 S.E.2d 902, 909 (Ct. App. 2001) (quoting 28A C.J.S. Easements § 57 (1996) ). When interpreting a deed, the primary rule of constructing the deed is to ascertain and effectuate the parties' intentions, unless that intention contravenes some well-settled rule of law or public policy. Sandy Island Corp. , 246 S.C. at 420, 143 S.E.2d at 806. "The intention of the grantor must be found within the four corners of the deed."
**260 K & A Acquisition Grp., LLC v. Island Pointe, LLC , 383 S.C. 563, 581, 682 S.E.2d 252, 262 (2009) (quoting Gardner v. Mozingo , 293 S.C. 23, 25, 358 S.E.2d 390, 392 (1987) ).
In Tupper v. Dorchester County , our supreme court distinguished between an easement in gross and an easement appurtenant:
The character of an express easement is determined by the nature of the right and the intention of the parties creating it. An easement in gross is a mere personal privilege to use the land of another; the privilege is incapable of transfer. In contrast, an appurtenant easement inheres in the land, concerns the premises, has one terminus on the land of the party claiming it, and is essentially necessary to the enjoyment thereof. It also passes with the dominant estate upon conveyance. Unless an easement has all the elements necessary to be an appurtenant easement, it will be characterized as a mere easement in gross. Whe[n] language in a plat reflecting an easement is capable of more than one construction, that construction which least restricts the property will be adopted.
326 S.C. at 325-26, 487 S.E.2d at 191 (footnote and citations omitted).
In the present case, Appellants argue the master erred because two of the essential elements of an appurtenant easement-terminus on the land of the party claiming an easement and the easement is essentially necessary to the enjoyment of the dominant parcel-were missing. We address each argument in turn.
a. Terminus
Appellants assert the easement in the 1911 Deed cannot be construed as an easement appurtenant and must be an easement in gross because the easement did not have a terminus on 47 Legare, was entirely on 45 Legare, and ran from Legare Street to the westernmost property line. Moreover, Appellants contend the reaffirmed easement in the 1971 Covenant, which shortened the length of the easement, did not transform the easement from an easement in gross to an easement appurtenant. Specifically, Appellants argue the reaffirmed easement still did not create a terminus on 47 Legare because the newly **261 created terminus in the deed-identified as lines F-H-was entirely on 45 Legare. We disagree.
The absence of a terminus on the dominant estate is fatal to a claim of an appurtenant easement. See Shia v. Pendergrass , 222 S.C. 342, 351, 72 S.E.2d 699, 703 (1952) ("[A]n essential feature of an appurtenant easement or way is that it have one of its termini on the dominant property.").
In granting Tamsberg's summary judgment motion, the master relied on Whaley v. Stevens , 21 S.C. 221 (1884), to conclude that Tamsberg and her predecessors-in-title enjoyed an easement appurtenant. The master stated Whaley established that, in South Carolina, the terminus requirement only requires *501 "the dominant estate be contiguous or adjacent to the easement or right of way." Appellants contend Whaley is unclear on the issue or definition of terminus. As support, Appellants cite Steele v. Williams , 204 S.C. 124, 28 S.E.2d 644 (1944), in which our supreme court found the easement in question-an alleyway that served as the appellant's border-was an easement in gross rather than appurtenant when the easement lacked a terminus on the appellant's property. We, however, find Whaley is applicable to the outcome of the instant case whereas Steele is distinguishable.
In Whaley , our supreme court found that a terminus could not be on one's land if the easement in question did not touch the property of the one claiming it. 21 S.C. at 224-25. In that case, the supreme court examined whether Whaley was entitled to use a right of way that ran over Stevens's land and led to a creek as an easement in gross or easement appurtenant. Id. at 221-22. After distinguishing between an easement appurtenant and easement in gross, the court stated that an essential element of an easement appurtenant is having one of its termini on the land "to which it is claimed to be appurtenant." Id. at 224. The court noted the "more fatal objection" to Whaley's complaint was not alleging that the claimed appurtenant right of way began or even led from his land. Id. Indeed, the court found that the right of way did not even appear to touch Whaley's property at any point or even "reach[ ] to it." Id. Importantly, the court could not find the right of way in question to be appurtenant to Whaley's land when the right of way did not have one of its termini on Whaley's property and **262 when the right of way started and ended on Stevens's land. Id. at 224-25. Thus, the dominant estate must at the very least touch the claimed easement to enable the easement to qualify as appurtenant.
However, in Steele , our supreme court found that the appellant did not have an easement appurtenant in an alleyway because the alleyway did not have a terminus on the appellant's land, even though the alleyway was the northern boundary of appellant's property, when the alleyway began on a public right of way and ended on the land of the respondent. 204 S.C. at 131-32, 28 S.E.2d at 647. In that case, the appellant's predecessor-in-title, Smith, and the respondent owned adjacent lots. Id. at 126-27, 28 S.E.2d at 645. Smith and the respondent recorded reciprocal deeds, which created an easement in an alleyway that ran from the street adjacent to Smith's lot on the east; crossed over Smith's land and onto the respondent's property; and then ran over the respondent's property before dead-ending on the respondent's western property line. Id. at 127, 28 S.E.2d at 645. Smith later subdivided her property lying south of the alleyway and created three adjacent parcels, which included the appellant's parcel that was bounded on the north by the alleyway and on the east by the public street. Id. at 127-28, 28 S.E.2d at 646. The appellant insisted that the parties to the deed intended to create an easement appurtenant in the alleyway. Id. at 132, 28 S.E.2d at 647. Our supreme court, however, found the alleyway was not an easement appurtenant, despite the deed's inclusion of the language "heirs and assigns forever," because the easement did not meet the elements of an easement appurtenant as the easement did not have a terminus on the appellant's lot, but instead, only touched it as a boundary before terminating on the respondent's westernmost property line. Id.
While we recognize that South Carolina requires an easement appurtenant to have a terminus on the property of the party claiming the easement, no South Carolina case explicitly defines the terminus requirements. However, we find that determining the existence of a terminus is a fact-specific inquiry dependent upon the facts of each individual case. See Pendergrass , 222 S.C. at 351, 72 S.E.2d at 703 (finding "[t]he evidence fails to establish that the alleged right **263 of way has a terminus on respondent's lot, and the absence of a terminus on his property is fatal to his claim to an appurtenant easement," but not otherwise defining the terminus requirements); Hayes v. Tompkins , 287 S.C. 289, 292-93, 337 S.E.2d 888, 890-91 (Ct. App. 1985) (finding evidence that an implied easement of necessity had a terminus on the dominant land supported a finding that the easement was appurtenant rather than in gross). *502 Upon our examination of relevant case law, we find the existence of a terminus on the land of the party claiming an easement appurtenant may be established if the easement meets certain criteria. Intuitively, the dominant estate must have access to the purported easement. In addition, a court could find an easement appurtenant if the purported easement (1) at least touches the dominant estate and (2) in cases where the easement is an adjacent boundary between-or runs parallel to-the dominant and servient estates such as in the instant case, the easement does not extend beyond the purported dominant estate's boundary-i.e., at most, the easement ends at the lot line of the dominant estate. See Whaley , 21 S.C. at 224-25 (finding a right of way could not be appurtenant to the purported dominant estate when the right of way did not have a terminus that touched or reached the dominant estate); but see Steele , 204 S.C. at 131-32, 28 S.E.2d at 647 (finding no terminus on appellant's land when an alleyway running adjacent to the appellant's property began at the public thoroughfare on the east of the appellant's property, continued westward over the land of the appellant's predecessor-in-title, then continued over the respondent's property, extended beyond appellant's property line, and ended on respondent's westernmost property line). This rule statement comports with other jurisdictions that similarly require an easement appurtenant to have a terminus on the land of the party claiming it. See Newman v. Michel , 224 W.Va. 735, 688 S.E.2d 610, 618 (2009) (finding the appellants' argument that the easement in question was an easement appurtenant failed in part because the easement did not connect to the dominant estate, but instead ran over the servient estate and connected to the road leading to the dominant estate); Hodges v. Lambeth , 731 S.W.2d 880, 882 (Mo. Ct. App. 1987) ("An essential legal attribute of an easement appurtenant for right of way **264 purposes is that one terminus of the right of way must lie on the land to which it is claimed to be appurtenant."); id. ("The Rethmeier tract does not appear to meet that qualification as the right of way went through that tract ; it did not terminate there ." (emphasis added) ).
Although Appellants rely on Steele to demonstrate that an easement does not terminate on the purported dominant estate simply by touching the property, we find Steele is distinguishable from the instant case. Here, the easement did not extend beyond the western property line of 45 Legare or 47 Legare, whereas the alleyway in Steele extended beyond the appellant's property and ended at the respondent's westernmost property line. Additionally, Appellants assert that similar to Steele , a grantor cannot change the nature of the easement simply by including the language "to run with the land." While that premise is well established in South Carolina, we do not find it applicable here because the language in the 1911 Deed demonstrates Hinson's intent to create an easement appurtenant. Specifically, Hinson described the property at 47 Legare and included "the full and free use and enjoyment as an easement to run with the land of the right of ingress, egress, and regress, in, over, through[,] and upon the alleyway eight (8) feet wide" lying "immediately to the south of [47 Legare] and being the southern boundary of said [47 Legare]." See Tupper , 326 S.C. at 325-26, 487 S.E.2d at 191 ("[A]n appurtenant easement inheres in the land, concerns the premises, has one terminus on the land of the party claiming it, and is essentially necessary to the enjoyment thereof. It also passes with the dominant estate upon conveyance.").
Hinson clearly intended that the driveway be an easement appurtenant, and furthermore, the evidence demonstrates that the elements of an easement appurtenant are met. See Tupper , 326 S.C. at 325, 487 S.E.2d at 191 ("[A]n appurtenant easement inheres in the land, concerns the premises, has one terminus on the land of the party claiming it, and is essentially necessary to the enjoyment thereof."). The record indicates that, at the time of the 1911 Deed, a garage existed at the rear of 47 Legare and the driveway was the only accessible method of reaching the garage. Additionally, the Cummings & McCrady plat, which was referenced in the 1971 Covenant, shows the existence of the structure at the rear of **265 47 Legare and located adjacent to the present-day gate, which allows access onto 47 Legare at a point where the easement ends. Not only does the *503 easement touch 47 Legare as a southern boundary and does not extend beyond 47 Legare's boundary, nothing in the record indicates that Tamsberg was prevented from accessing 47 Legare directly from the easement. Indeed, Tamsberg directly accessed the property via the rear gate. This indicates the existence of a terminus onto 47 Legare. Because we find the parties who created the easement intended for it to be an easement appurtenant and because we find the easement has a terminus on 47 Legare, where the rear gate is located, we affirm the master on this issue.
b. Necessity
Appellants next contend the master erred in finding an easement appurtenant because the easement is not essentially necessary to the enjoyment of 47 Legare. We disagree.
"The principle is well settled that a right of way appurtenant cannot be granted, unless it is essentially necessary to the enjoyment of the land to which it appertains." Kershaw v. Burns , 91 S.C. 129, 133, 74 S.E. 378, 379 (1912). Generally, absent termination due to circumstances such as abandonment, estoppel, end of necessity, merger, release, or prescription by the servient estate, an easement appurtenant is perpetual and irrevocable. See 12 S.C. JURIS. Easements § 29 (1992). However, the end of a necessity appears to terminate an easement appurtenant that is implied by necessity and will not terminate an express easement. See Smith v. Comm'rs of Pub. Works of City of Charleston , 312 S.C. 460, 464 n.2, 441 S.E.2d 331, 334 n.2 (Ct. App. 1994) ("When an easement is implied by necessity, courts in other jurisdictions have held that the easement ceases at the time the necessity no longer exists. We have been unable to locate a South Carolina case that holds such. Here, however, the instant easement is expressly created by grant and the rules relating to implied easements of necessity do not apply." (citation omitted) ); see also 12 S.C. JURIS. Easements §§ 29 through 34 (1992) (discussing various methods to terminate easements in South Carolina).
**266 The master found Appellants presented no evidence demonstrating issues of material fact regarding whether the easement was necessary at the time of either the 1911 Deed or the 1971 Covenant. The master also found the easement was the only reasonable method for Tamsberg to bring large-scale equipment and tools to the rear of 47 Legare because 47 Legare's front gate was too narrow to permit large equipment or tools. Additionally, the master stated the easement provided the only adequate method of off-street parking for 47 Legare. Appellants contend, however, that while the easement may have been necessary to access a garage that existed in both 1911 and 1971, the easement is no longer essentially necessary to the enjoyment of 47 Legare because the garage no longer exists, Tamsberg can access the rear of 47 Legare from the front gate, Tamsberg's gate at the rear of 47 Legare is too narrow to allow passage of any vehicle, and the easement is no longer used as a driveway but is used primarily by workmen as a footpath.
Upon our review of the record, we find the easement was necessary at the time of its creation in 1911 and also at the time of its reaffirmation in 1971 because the parties to the 1911 Deed and the 1971 Covenant intended the easement provide access to a then-existing garage. See K & A Acquisition Grp., LLC , 383 S.C. at 581, 682 S.E.2d at 262 ("The intention of the grantor must be found within the four corners of the deed." (quoting Gardner , 293 S.C. at 25, 358 S.E.2d at 392 ) ); Sandy Island Corp. , 246 S.C. at 420, 143 S.E.2d at 806 ("The intention of the parties here must be determined by a fair [interpretation] of the grant or reserve creating the easement."). Appellants' argument does not seem to dispute the easement's necessity at the time of creation, but rather, Appellants appear to argue that the easement terminates once it is no longer essential to the enjoyment of the property. However, "an appurtenant easement ... [is] perpetual and irrevocable" when, as here, the easement was expressly created, thereby making the rules related to implied easements by necessity inapplicable. See Smith , 312 S.C. at 464 n.2, 441 S.E.2d at 334 n.2 ; see also 12 S.C. JURIS. Easements § 29.
We find the master properly granted Tamsberg's motion for summary judgment *504 because Appellants did not present any evidence that the easement was not necessary at the time of **267 its creation in 1911 or reaffirmation in 1971. Further, no issue of material fact is created when examining the easement's necessity to the present enjoyment of 47 Legare. Tamsberg's affidavit states that she has continuously used the easement since purchasing the property, she has driven a golf cart down the easement to the rear of 47 Legare, she uses the easement for off-street parking, and she needs the easement to bring large equipment and tools to the rear of 47 Legare. Even when viewing the evidence in favor of Appellants' statements that Tamsberg does not personally use the easement and it was only used by her landscapers, no issue of material fact exists to dispute the necessity of the easement to bring large-scale equipment and tools to the rear of 47 Legare. Appellants contend the front gate allows access to the rear, but they offer no evidence to refute the necessity of the easement to allow large equipment into the rear of 47 Legare. Thus, we find the master did not err in finding the easement necessary for 47 Legare's use, and we affirm.
In conclusion, we find the evidence reflects the original parties to the 1911 Deed intended to create an easement appurtenant, and the elements for an easement appurtenant existed at the time of its creation. Accordingly, we find the master did not err in granting Tamsberg's motion for summary judgment, and we affirm the master's order.[8]
CONCLUSION
Based on the foregoing analysis, the master's order granting Tamsberg's motion for summary judgment is
AFFIRMED.
LOCKEMY, C.J., and KONDUROS, J., concur.

We decide this case without oral argument pursuant to Rule 215, SCACR.

Hinson's combined property was known as 47 Legare Street before the division. Both 45 and 47 Legare are bounded on the east by Legare Street and on the west by a wall bordering the Saint Peter's Church graveyard.

For clarity, we provide the complete chain of title for each property from the 1911 division to the current owners. We start with 45 Legare. Hinson retained 45 Legare until his death in 1917, and in 1919, his estate conveyed 45 Legare to his three nieces-Julia, Pauline Dill, and Frances Dill. In 1920, Julia and Frances conveyed their interest in 45 Legare to Pauline, who, in 1936, sold 45 Legare to Henry deSaussure. In 1955, Henry bequeathed 45 Legare to Margarette deSaussure Black. Black retained title to 45 Legare until her death in 1997, at which point her estate devised the property to her sons. In 2004, Black's sons conveyed 45 Legare to Appellants.
As for 47 Legare, Julia retained title to 47 Legare until her death in 1970, when the South Carolina National Bank of Charleston (the Bank) assumed title as executor of Julia's estate. In 1971, the Bank sold 47 Legare to Nancy Linton, who then sold 47 Legare to Tamsberg and her now deceased husband in 1988.

The record is unclear whether "parties" refers to the original parties to the 1911 Deed or Black and the Bank.

The gate still existed at the time of the hearing. The site of the former garage was a residential space as of 2004.

At his deposition, Appellant Williams testified Tamsberg asked for, and was given, Appellants' permission for her landscapers to walk down the easement.

The record is not clear as to whether the fence is the same as the wall Tamsberg erected in 2004 or if it is a different fence altogether.

Appellants assert that Tamsberg's restrictive covenant argument is an alternative argument if the easement in the 1911 Deed was an easement in gross. Additionally, Appellants' underlying cause of action relies on the non-existence of an appurtenant easement, which is an action at law. Therefore, because our finding of a valid appurtenant easement is dispositive, we need not address Appellant's remaining issues on appeal. See Futch v. McAllister Towing of Georgetown, Inc. , 335 S.C. 598, 613, 518 S.E.2d 591, 598 (1999) (ruling an appellate court need not address remaining issues when its resolution of a prior issue is dispositive).