**THIS OPINION HAS NO PRECEDENTIAL VALUE. IT SHOULD NOT BE CITED OR RELIED ON AS PRECEDENT IN ANY PROCEEDING EXCEPT AS PROVIDED BY RULE 268(d)(2), SCACR.**

**THE STATE OF SOUTH CAROLINA**
**In The Court of Appeals**

Carr Farms, Inc. and Titan Farms, LLC, Appellants,

v.

Susannah Smith Watson, Carson M. Watson, and Jane Watson, Respondents.

Appellate Case No. 2021-000659

———————

Appeal From Saluda County
Alison Renee Lee, Circuit Court Judge

———————

Unpublished Opinion No. 2024-UP-086
Heard December 5, 2023 – Filed March 20, 2024

———————

**AFFIRMED**

———————

Jonathan McKey Milling, of Milling Law Firm, LLC, of Columbia, for Appellants.

Daniel L. Draisen, of The Injury Law Firm, PC, of Anderson, for Respondents.

———————

**PER CURIAM:** Carr Farms, Inc. and Titan Farms, LLC (collectively, Appellants) appeal the circuit court's order granting Susannah Smith Watson partial summary judgment, arguing the circuit court erred in holding Watson's

easement (the Smith Deed Easement)[1] for a pond (the Pond) located partially on Appellants' properties was appurtenant and that Titan Farms did not have the right to use the portion of the Pond on its property.  We affirm.

1.  We hold the circuit court did not err in finding the Smith Deed Easement met each of the necessary elements for an appurtenant easement.  *See Tupper v. Dorchester County*, 326 S.C. 318, 325, 487 S.E.2d 187, 191 (1997) ("The character of an express easement is determined by the nature of the right and the intention of the parties creating it."); *id.* (explaining that while "[a]n easement in gross is a mere personal privilege to use the land of another" and "is incapable of transfer," an appurtenant easement "passes with the dominant estate upon conveyance."); *id.* ("[A]n appurtenant easement inheres in the land, concerns the premises, has one terminus on the land of the party claiming it, and is essentially necessary to the enjoyment thereof."); *id.* ("Unless an easement has all the elements necessary to be an appurtenant easement, it will be characterized as a mere easement in gross."); *Smith v. Comm'rs of Pub. Works of City of Charleston*, 312 S.C. 460, 467, 441 S.E.2d 331, 336 (Ct. App. 1994) ("[E]asements in gross are not favored by the courts, and an easement will never be presumed as personal when it may fairly be construed as appurtenant to some other estate."); *Proctor v. Steedley*, 398 S.C. 561, 571, 730 S.E.2d 357, 362 (Ct. App. 2012) ("The distinction between an appurtenant easement and an easement in gross involves the extent of a grant of an easement, as opposed to the creation of an easement.").

First, the Smith Deed Easement met the requirements that it "inhere in the land" and "concern the premises."  *See Inhere*, Black's Law Dictionary (11th ed. 2019) (defining "[i]nhere" as "[t]o exist as a permanent, inseparable, or essential attribute or quality of a thing; to be intrinsic to something").  The right to the impoundment of water on the servient estate was inseparable from the land on the servient estate. The land was essential to the dominant estate's use of the servient estate for the creation of the Pond as granted in the Smith Deed.  Appellants cite no authority to support their contention the Smith Deed Easement did not inhere to the land because at the time of the grant, no water was impounded on the servient estate

---

[1] Mattie Lee Bonnette was the predecessor-in-title for Watson and Titan Farms.  In a deed dated October 1, 1960 (the Smith Deed), Bonnette conveyed to "F. Broadus Smith, his heirs and assigns" five acres in Saluda County, which were bounded on the east and south by other lands Bonnette owned, and an easement for the creation of the Pond.  Although Carson M. Watson and June Watson are named as defendants, only Susannah Watson currently owns the property conveyed in the Smith Deed.

that Smith, the original grantee, could have used exclusively. *See McCall v. IKON*, 380 S.C. 649, 659-60, 670 S.E.2d 695, 701 (Ct. App. 2008) (stating "an appealed order comes to the appellate court with a presumption of correctness and the burden is on appellant to demonstrate reversible error"). Furthermore, the legal creation of an easement by express grant can precede the physical creation and use of the easement. S*ee Binkley v. Burry*, 352 S.C. 286, 297, 573 S.E.2d 838, 844 (Ct. App. 2002) ("An easement by its very nature involves the right to encroach upon another's property."); *Bundy v. Shirley*, 412 S.C. 292, 304, 772 S.E.2d 163, 169 (2015) ("An easement is a right given to a person to use the land of another for a specific purpose."); *Binkley v. Rabon Creek Watershed Conservation Dist. of Fountain Inn*, 348 S.C. 58, 69, 558 S.E.2d 902, 908 (Ct. App. 2001) (holding the "clear and unambiguous language" of a deed granting the defendant flowage rights over the dam created an easement that extended to the top of the dam, even though the impounded waters did not extend that far until a flood almost twenty years after the creation of the easement).

The Smith Deed Easement met the requirement of having a terminus on the land of the dominant estate. *See Williams v. Tamsberg*, 425 S.C. 249, 263, 821 S.E.2d 494, 502 (Ct. App. 2018) (stating that in order for a terminus on the land of the party claiming an easement appurtenant to exist, "the dominant estate must have access to the purported easement"); *id.* ("[A] court could find an easement appurtenant if the purported easement . . . at least touches the dominant estate."). Here, the Smith Deed Easement clearly touched the dominant estate as the waters of the Pond touched both the servient and dominant estates. Finally, the Smith Deed Easement was essentially necessary to the enjoyment of the dominant estate because it was necessary to grant the dominant estate the right for the impounded waters to encroach on the servient estate, and therefore necessary for the dominant estate to enjoy the Pond, which was built in accordance with the intentions of the Smith Deed grantor and grantee.

2. We disagree with Appellants' argument that the Smith Deed Easement did not evidence a clear intent for Watson to have exclusive use of the Pond. First, the grant of the Smith Deed Easement fell under the Smith Deed's granting clause, which was to Smith and his heirs and assigns. The deed's easement provision distinguished between "F. Broadus Smith," who was to construct the dam, and the "grantee," which included Smith and his heirs and assigns, who was to have "exclusive use and control" of the Pond. Thus, considering the plain language of the deed, we hold the parties intended for the grant of the exclusive use of the easement to be to the grantee, which was Smith, and his heirs and assigns. *See Proctor*, 398 S.C. at 574, 730 S.E.2d at 364 ("Generally, the phrase 'heirs and

assigns' will not convert an easement in gross to an appurtenant easement when the elements of an appurtenant easement are not otherwise present."); *id.* ("However, such language is relevant to the determination of the grantor's intent."); *Rabon Creek*, 348 S.C. at 71, 558 S.E.2d at 909 (stating that in order to determine the parties' intent, the "grant of an easement is to be construed in accordance with the rules applied to deeds and other written instruments" (quoting 28A C.J.S. *Easements* § 57, at 235 (1996))); *Windham v. Riddle*, 381 S.C. 192, 201, 672 S.E.2d 578, 583 (2009) (stating "the deed must be construed as a whole and effect given to every part if it can be done consistently with the law" (quoting *Gardner v. Mozingo*, 293 S.C. 23, 25, 358 S.E.2d 390, 391-92 (1987))); *id.* ("The intention of the grantor must be found within the four corners of the deed." (quoting *Gardner*, 293 S.C. at 25, 358 S.E.2d at 392)). Thus, we hold Watson, as Smith's heir and assign, now has the right to the exclusive use and control of the Pond.

Second, we hold the lack of specificity of the amount of the servient estate authorized for the use of the construction of the dam or to be covered with the impounded water did not make the easement invalid. *See Smith*, 312 S.C. at 469, 441 S.E.2d at 337 ("[A]n easement in general terms is limited to a use which is reasonably necessary and convenient and as little burdensome to the servient estate as possible for the use contemplated.").

Third, we disagree with Appellants' argument that because the Smith Deed Easement was absent from their chain of title, they should not be bound by the easement's purported grant of "exclusive use and control" of the Pond. *See Spence v. Spence*, 368 S.C. 106, 119, 628 S.E.2d 869, 876 (2006) (holding constructive notice is "notice imputed to a person whose knowledge of facts is sufficient to put him on inquiry; if these facts were pursued with due diligence, they would lead to other undisclosed facts" (quoting *Strother v. Lexington Cnty. Recreation Comm'n*, 332 S.C. 54, 64 n.6, 504 S.E.2d 117, 122 n.6 (1998))); *Rabon Creek*, 348 S.C. at 71, 558 S.E.2d at 909 ("Notice of a deed is notice of its whole contents . . . and *it is also notice of whatever matters one would have learned by any inquiry which the recitals of the instrument made it one's duty to pursue*." (emphasis in original) (quoting 66 C.J.S. *Notice* § 19 (1998))); *Ten Woodruff Oaks, LLC v. Point Dev., LLC*, 385 S.C. 174, 184, 683 S.E.2d 510, 515 (Ct. App. 2009) ("[C]onstructive notice is not necessarily confined to the public record . . . ."); 66 Am. Jur. 2d *Records and Recording Laws* § 78 (2021) ("[T]here is authority that a purchaser cannot ignore deeds issued by a common grantor, or fail to search for them, on the theory that the deeds are outside the servient estate's chain of title, since to hold otherwise would undermine the broad constructive notice afforded recorded conveyances under the recording statutes."); *id.* ("If a deed or a contract for the

conveyance of one parcel of land with a covenant or easement affecting another parcel of land owned by the same grantor is duly recorded, the record is constructive notice to a subsequent purchaser of the other parcel."); *S.C. Dep't of Transp. v. Horry County*, 391 S.C. 76, 84, 705 S.E.2d 21, 25 (2011) (holding servient estate holders had constructive notice of an easement their predecessor-in-title granted the State even though their 1985 deeds did not mention the easement, explaining, "[i]n this case, the deed creating the easement was properly recorded; thus, Appellants had constructive notice of the easement, regardless of their legally unfounded argument that finding the deed in question would be like 'finding a needle in a haystack.'"). Here, the Pond was apparent from a visual inspection of the property and Titan Farms's deed referenced a plat prepared for its grantor showing the Pond was partially on the property conveyed. *See Murrells Inlet Corp. v. Ward*, 378 S.C. 225, 232, 662 S.E.2d 452, 455 (Ct. App. 2008) ("[W]here a deed describes land as is shown as a certain plat, such becomes a part of the deed." (alteration in original) (quoting *Carolina Land Co. v. Bland*, 265 S.C. 98, 105, 217 S.E.2d 16, 19 (1975))). Thus, Titan Farms had notice of the existence of the Pond and was on inquiry notice about the legal ownership of the Pond, which spanned three separate properties. Furthermore, if Titan Farms had searched for deeds from its common predecessor-in-title with Watson, it would have discovered the properly recorded Smith Deed. Accordingly, Appellants were not entitled to claim they were not bound by the easement.

3. We disagree with Appellants' argument that the granting of the exclusive easement is contrary to the established law of South Carolina. *See Morris v. Townsend*, 253 S.C. 628, 635, 172 S.E.2d 819, 822-23 (1970) (holding the plaintiffs did not have the right to use waters impounded on their land, for which the defendant had an easement, because the plaintiffs did not acquire an interest in defendant's water); *id.* at 635, 172 S.E.2d at 823 ("The gist of the creation of the easement in this case is in order that the defendant may have and operate his own lake."); *id.* at 636, 172 S.E.2d at 823 ("While it is true that plaintiffs may use their land for any purpose not inconsistent with the rights acquired by the defendant, such does not include the right to use the lake and its waters which came into being solely by reason of the fact that the defendant, at his own expense, built the dam. Except for the dam, which defendant may maintain or remove, water would not approach plaintiffs' land and no riparian rights are here involved."); *White's Mill Colony Inc. v. Williams*, 363 S.C. 117, 130, 134-35, 609 S.E.2d 811, 818, 820 (Ct. App. 2005) (holding "owners of all or part of a pond or lake bed have the right to exclude others from accessing or using the surface waters above their property" but noting the owner of the land under a lake is free to make other arrangements with the abutting property owners). Here, even if Appellants would have had an interest

in the use of the Pond's waters by virtue of owning the land beneath the waters, the grantor and grantee of the Smith Deed made an agreement giving the grantee, who undertook the investment to construct the Pond, exclusive use of its waters to protect his investment. We hold the circuit court's finding that Watson had exclusive use and control of the Pond is consistent with both *Morris* and *White's Mills Colony*. *See* 363 S.C. at 131, 363 S.E.2d at 818 ("Because the construction of a man-made water body often involves the expenditure of substantial sums of money and the expense is not, as a rule, divided proportionately among the various abutting owners, the individual making the expenditure is justified in expecting that superior privileges will inure to him in return for his investment." (quoting *Anderson v. Bell*, 433 So. 2d 1202, 1205 (Fla. 1983))).

**AFFIRMED.**

**WILLIAMS, C.J., and HEWITT and VERDIN, JJ., concur.**